Argued January 5, affirmed April 22, 1970

KRAUSE, *Respondent, v.* WASHINGTON NA-
TIONAL INSURANCE COMPANY,
an Illinois corporation, *Appellant.*

468 P.2d 513

*Asa L. Lewelling,* Salem, argued the cause and filed a brief for appellant.

*Bruce W. Williams,* Salem, argued the cause for respondent. With him on the brief were Williams, Skopil, Miller & Beck, Salem.

TONGUE, J.

This is an action to recover death benefits under a policy of group life insurance issued by defendant to the American College of Hospital Administrators, of which plaintiff's husband was a member. Defendant appeals from a judgment in favor of plaintiff.

The primary issues arise from the fact that on October 18, 1965, plaintiff's husband prepared and mailed an application for life insurance, but did not enclose payment of the initial premium. A certificate of insurance was then prepared by defendant, effective November 1, 1965, but was not delivered to the decedent and on December 6, 1965, a statement was sent to decedent for the initial premium, for the period November 1, 1965, to February 1, 1966. Meanwhile, decedent had died on November 19, 1965.

Defendant contends that decedent's failure to pay the initial premium, coupled with the nondelivery to him of the certificate of insurance, prevented coverage from becoming effective prior to his death.

Before undertaking to discuss the law of the case, however, a more detailed summary of the facts becomes necessary.

*Provisions of the Master Group Life Policy.*

The American College of Hospital Administrators (ACHA) on June 1, 1960, submitted to defendant a "Master Application for Group Insurance" for its members, accompanied by the sum of $50 "as a premium deposit to be applied to payment of premiums under the policy herein applied for."

A "group life policy" (the master policy) was then issued by defendant, effective December 1, 1960, and naming ACHA as the "policyholder." The provision of the master policy most heavily relied upon by defendant is as follows:

> "*This policy* is issued in consideration of the *application* of the *policyholder* and of the *payment in advance* of the premiums computed and payable as hereinafter provided." (Emphasis added)

Thus, it is obvious that this provision relates to the application of the "policyholder", the ACHA, for issuance of the master policy and to premium payments by it, rather than to the subsequent application of individual members for issuance of individual certificates of insurance and to the payment of premiums by them.

The only other specific provision of the master policy relied upon by defendant is its provision for a "grace period" of 31 days for payment of all premiums "after the first". Thus, defendant contends that this provision further supports his contention that payment of the first premium by the decedent was a "condition precedent to coverage in this case."

An examination of the master policy, however, reveals that the provision for a "grace period" also relates to the payment of premiums by the "policyholder" (ACHA), rather than by its individual members, and that the "first" premium was payable (and apparently paid) by ACHA in 1960 when the master policy became effective. Furthermore, it is significant to note that by the terms of the master policy "renewal premiums" were payable by ACHA semi-annually, on February 1 and August 1st of each year and that (as explained later) such payments were *not* paid "in advance", but consisted of the total premiums collected from individual insured members during the preceding six months period.

The only reference in the master policy to payment of individual premiums is that:

"With respect to persons insured subsequent to the effective date of this policy (the master policy), the premium charged *for* such persons will commence on the first day of the policy month coinci-

dent with or next following the date of their insurance becomes effective." (Emphasis added)

The master policy goes on to provide that:

"The company will issue to the policyholder (ACHA) for delivery to each insured person under this policy an individual certificate describing the insurance protection to which such person is entitled * * *."

The "eligibility" of individual members for insurance, and the effective date of such individual certificates of insurance, are then provided for by the master policy as follows:

"Insurance under this policy shall become effective with respect to an eligible person on the date of his eligibility for insurance."

and that:

"The date of eligibility with respect to persons who became members in good standing of the policyholder and are actively working after the effective date of this policy *shall become insured on the first date of the month following the date their application with evidence of insurability is approved by the company.*" (Emphasis added)

The master policy does not provide that either payment of the first premium by an individual member or delivery of the individual certificate of insurance shall be a condition precedent to his individual coverage.

*Practices of Parties in Administration of Insurance Program.*

The group insurance program was administered by Marsh & McLennan, insurance brokers in Chicago, who also assisted ACHA in developing the program. Each summer the ACHA, at its annual meeting, admitted

new members. There would then be an "open enroll-ment period", during which new members were so-licited for group life insurance. During that period new members were accepted for insurance without re-gard to previous medical history and solely upon showing that they were employed as hospital admin-istrators on a full time basis.

Thus, all new members of ACHA received a form letter of "welcome", enclosing a "brochure explaining the Basic Life Plan", stating that new members may "enroll" in that plan "with no health questions", and instructing the new member to fill out and return the application form included with the brochure and to "enclose with the application the initial premium to cover the annual or semi-annual premium."

The "brochure", in "explaining" the plan, sets forth a "schedule" of the six various "plans" for insurance, depending upon salary classification and amount of insurance, as well as a schedule of "semi-annual pre-mium rates", depending upon the particular plan chosen and the age of the applicant. Below these two schedules is the following sentence:

"Semi-annual premium is payable on August 1 and February 1 and the annual premium will be twice the premium rate shown above less $1."

The application form attached to the brochure in-cludes instructions to "check" whether the applicant desires "to pay my premium" "annually" or "semi-annually" and to "make check payable to ACHA Group Insurance Plan."

No instructions are given, however, either in the brochure or application, how to compute the premium on a pro-rata basis for applications submitted during

the period of "open enrollment", between August 1 and February 1. It was testified by the vice president of Marsh & McLennan responsible for administration of group programs, a Mr. Seering, whose deposition was taken and offered as a witness for defendant, that one of the requirements "definitely specified" was that the first premium check accompany each application. He conceded, however, that one reading the brochure "might wonder" about pro-rata payments and "would not know anything from reading the brochure or application about any requirement to send in his first premium with the application", but "would wonder about it" and "would wonder when his first premium would be."

The application form, after spaces for the usual information relating to name, address, age and beneficiary, instructed the applicant to "check plan for which you are eligible" inquired whether the applicant was "now at work on a full time basis", the state of his health and his past medical or surgical advice or treatment (waived during the "open period") and then stated as follows:

"4. Do you understand and agree that this life insurance shall not become effective unless you are gainfully employed on the date it would otherwise become effective? * * *

"5. Do you understand and agree that this life insurance will not become effective *unless and until this application has been approved by the insurance company?* * * *" (Emphasis added)

Mr. Seering testified that the reason that the brochure (which included the attached application) did not specifically state that the initial premium must be enclosed with the application was that in the

brochure "we try to convey the important information concerning the coverage and the cost to the individual"; that the brochure was "based on satisfying evidence of insurability" and that "if the evidence doesn't satisfy evidence of insurability, we cannot issue him any coverage."

He also testified that enrollees during an "open enrollment period" "normally" do not remit premium payments because they either "don't know how much it should be" (i.e., how to compute the pro-rata amount due for a premium between the semi-annual premium dates) or "expect to get a bill for it." Elsewhere he testified that only a "minority", or "just a small group", of such applications did not enclose premium payments with their applications.

The applications were mailed to the office of Marsh & McLennan, where a record card was prepared and the applications were then forwarded to the insurance company for preparation of the individual certificates. Applications received during an open enrollment period without checks for pro-rata premium payments were processed in the same manner and were also forwarded to the insurance company for preparation of individual certificates.

In such cases, according to Mr. Seering, the insurance company would not know whether or not the premium payment had been received, but would proceed to prepare the individual certificates because "they would assume that either they were going to receive the money or had received it".

He testified at one point that when an application was received without payment of the initial premium, either a form letter or a "premium notice" would be sent to such an individual, but that the certificate

would not be sent to him until he had paid the first premium. Elsewhere, however, Mr. Seering testified that in such cases the applicant would be sent a form letter telling him that he had not paid the premium and apparently enclosing a statement for the amount of the premium, but that "normally", even in such a case, the certificate of insurance would be enclosed with that form letter.

In addition, it appears that when premiums were received by Marsh & McLennan they were deposited in a special account and not paid to defendant insurance company until either after the end of the open enrollment period or on the next date when the "renewal premiums" were payable under the term of the master policy, on the first day of February and August of each year. Thus, when an application was forwarded by Marsh & McLennan to the insurance company it made up the individual certificate without regard to whether the first premium had been paid by that individual.

### Handling of Application of Decedent.

On October 18, 1965, in response to the form letter and brochure soliciting his "enrollment" in defendant's "Basic Life Plan", plaintiff's deceased husband filled out the "individual application" form. He stated that he was working on a "full time basis" (the sole requirement for eligibility during the "open period"), checked the form to the effect that he wanted $10,000 of insurance under "Plan 6" and that "I wish to pay my premium * * * annually", and mailed it in without a check. During 1965 the "open enrollment period" was from August 1 to December 1. Thus, the application was made between the semi-annual pre-

mium dates of August 1 and February 1, so that a "prorating" of the initial premium payment was required.

The application was received by Marsh & McLennan, and a notation was then made upon it, "no ck. rec'd. 10-25". In accordance with usual practice, the application was then forwarded to defendant for approval in late October or early November, even though no premium payment had been received.

In this instance, however, defendant was put on notice that no check had been received for the premium payment. Nevertheless, defendant prepared "Certificate of Insurance" No. 1104, which "certifies that the person named below is insured", with an "effective date" of November 1, 1965. This certificate contained no provisions making either payment of the first premium or delivery of the certificate conditions precedent to its becoming effective.

It is conceded by defendant that "when the certificate of insurance was prepared by defendant it was delivered to Marsh & McLennan." According to defendant, however, the certificate was only to be sent to the decedent "if the first premium had been paid." It was admitted by Mr. Seering that Marsh & McLennan were not notified that decedent's application had not been accepted, if such had been the fact.

Beginning at that point, however, the "usual procedures", as testified to by Mr. Seering, were not followed. Instead, and not until December 6, 1966, was a "premium notice" mailed to decedent, for the sum of $25.05 as the "pro-rata" premium due for the period "11-1-65 to 2-1-66". Meanwhile, decedent had died on November 19, 1965.

According to Mr. Seering, since the premium notice was not sent out until after November 1, "we would

have had to revise the effective date of his coverage" of the certificate of insurance to the first of the month following the receipt of payment and would have had to refund a portion of the premium, if paid in accordance with that statement. No attempt was made by defendant, however, to reform the certificate of insurance because of any such alleged mistake. Indeed, Mr. Seering stated that premium notices were sometimes retroactive, as in this case.

Mr. Seering also conceded that if payment had been made in accordance with that premium notice, decedent would have had insurance coverage from November 1, 1965. His only explanation for the manner in which the matter was handled and the premium notice prepared was "the volume of work that the girl was handling at the time" and that she "was under a particularly heavy volume of work."

On April 22, 1966, plaintiff tendered payment of the premium. The tender was rejected by defendant on April 25, 1966.

*Payment and Delivery as Conditions of Effective Coverage.*

As previously stated, defendant's position in this case is "that Krause's failure to pay a premium coupled with nondelivery to him of the certificate of insurance prevented coverage from initiating prior to his death." Defendant also contends that there is no evidence that the application of Mr. Krause was accepted and that the policy was delivered to Marsh & McLennan as "defendant's agent to accept or decline the application on defendant's behalf depending upon the payment of the first premium."

■ The basic issue, of course, is whether a contract of insurance had been consummated prior to the death

of Krause. As a general proposition, a contract of insurance is usually effected when an offer, in the form of an application for insurance by the insured, is accepted by the insurance company.[1]

By the terms of the insurance contract, however, it may be, and often is, provided that the insurance policy shall not become effective until the first premium has been paid or until the policy has been delivered to the insured. When such provisions are included in the insurance contract as conditions precedent they are held to be effective, in accordance with their terms.[2]

On the other hand, in the absence of contract provisions making payment of the first premium or delivery of the policy conditions precedent to effective coverage, and in the absence of statutory provisions to the same effect, it is held by most authorities that neither payment of the first premium nor delivery of the policy to the insured is necessary in order for the contract to become effective.[3]

---

[1] 44 CJS 969, Insurance § 232; 12 Appleman, Insurance Law, Practice 171, § 7126.

[2] 14 Appleman, *supra*, 9 (note 63) 13, §§ 7833, 7835.
See also: Cranston v. West Coast Life Insurance Co., 63 Or 427, 435-37, 128 P 427 (1912); Morford v. California-Western States Life Insurance Co., 161 Or 113, 122, 88 P2d 303 (1939).

[3] 44 CJS 1051, 1075, Insurance §§ 263, 270 and 1 Couch, Insurance 2d 354-55, 370, 419-24 §§ 8:2, 9:1, 10:2, 10:4, 10:5 and cases cited therein. See also 1 Cooley's Briefs, Insurance 601; 14 Appleman, *supra*, 12, § 7834 and 1 Appleman, *supra*, 199, § 133.
Nearly all cases cited by defendant to the contrary (all being cases from other jurisdictions) were cases in which either the policies involved or the application for insurance expressly provided that payment of the first premium or delivery of the policies were conditions precedent to their becoming effective.
Oregon appears to be in accord, at least with respect to the lack of need for payment of the first premium in the absence of express contract provision. Hardwick v. State Insurance Co., 20 Or 547, 555 (1891).

There is authority, however, that although payment of the initial premium is not a requirement for effective coverage, in the absence of such a provision in the insurance contract, the unconditional delivery of a policy may nevertheless be necessary, even in the absence of a contract provision to that effect, unless it appears that the parties intended that the policy become effective upon acceptance of the application, regardless of delivery to the insured.[4]

Where delivery of the policy is required before it can become effective, it has been held that delivery to the insurance company's own agent is not sufficient, particularly if such delivery is made upon condition that the agent collect the first premium payment before delivering the policy to the insured.[5] This court, how-

---

[4] See 1 Appleman, *supra,* 199, § 133, and cases cited therein. Upon reading such cases, however, it appears that in nearly all of them the insurance contract expressly required delivery of the policy as a condition precedent to effective coverage. Appleman also states (at p 199) that:

"Some of these same jurisdictions, however, and many others hold that in the absence of any policy provision making such delivery a condition precedent to validity, the unconditional acceptance by the insurer and the issuance of the policy is sufficient."

It would appear that this court has not directly decided the question, although it has held that a contract of insurance "may be so far assented to as to give a right of action thereon", even though until delivery and acceptance of the policy the contract is "not finally executed". Lane v. Brotherhood of Locomotive Enginemen and Firemen, 157 Or 667, 679, 73 P2d 1396 (1937) and Stringham v. Mutual Insurance Co., 44 Or 447, 456, 75 P 822 (1904).

[5] 1 Couch, *supra,* 376, § 9:5. According to 1 Appleman, *supra,* 227, § 141, however, it is the "better rule" that the insured is not chargeable with knowledge of limitations upon the agent's authority to make delivery and that delivery contrary to instructions is binding in the absence of actual knowledge of such limitations, although recognizing that some courts hold to the contrary. On this subject, although not directly in point, see Cranston v. West Coast Life Insurance Co., *supra,* at 441.

ever, approved the following rule in *Morford v. California Western States Life Insurance Co.*, 166 Or 575, 588, 113 P2d 629 (1941):

> "It may, however, be regarded as settled that the receipt by an agent from his company of a policy, to be unconditionally delivered by him to the applicant, is tantamount to a delivery to the insured, though the agent never parts with possession of the policy, and its delivery to the applicant is by contract made essential to its validity."

■ In addition, delivery of the policy, where required, is satisfied by its delivery to a broker or other agent for the insured.[○]

■■ On application of the foregoing rules of law to the facts of this case we find first that payment of the first premium by Krause was not a condition precedent to coverage because of the absence of any such policy provision.

It is urged by defendant, however, that such a result is required by a provision in the *master policy* to the effect that it was "issued in consideration of the application of the *policyholder* and the payment *in advance* of the premiums computed and payable as hereinafter provided." As already noted, however, this provision in the master policy referred to the application of ACHA and payment of premiums by it, rather than to applications by individual members, whose premium payments were not delivered to the insurance company until the end of each semi-annual period (or end of the "open enrollment" period).

It is also well established that a policy provision making payment of the first premium a condition

---

[○] 1 Couch, *supra*, 437 § 10:17; 1 Appleman, *supra*, 207, § 135.

precedent to coverage must be clear and unambiguous and will not be implied.[⊙]

Accordingly, we hold that the failure of Mr. Krause to enclose with his application a check in an amount sufficient to pay the first premium did not, of itself, prevent coverage from becoming effective.

■ Similarly, we find, on application of the foregoing rules of law to the facts of this case, that there was an effective acceptance by defendant of the application for insurance by Mr. Krause and that if delivery of an individual certificate of insurance was required, any such requirement was satisfied by delivery of that certificate by defendant to Marsh & McLennan as agent of the insured, for the reasons next stated.

As previously noted, the individual application signed by Mr. Krause included the following question and answer, consistent with terms of the master policy, as also quoted above:

"5. Do you understand and agree that this life insurance will not become effective unless and until this application has been approved by the Insurance Company? 'Yes'"

Thus, since neither payment of the first premium nor delivery of the policy were expressly made conditions precedent to effective coverage, it follows that the only remaining requirement intended by the parties to be satisfied as a condition of effective coverage

---

[⊙] 1 Couch, *supra,* 374, § 9:3; 14 Appleman, *supra,* 12, § 7834. See also Schweigert v. Beneficial Standard Life Insurance Co., 204 Or 294, 301, 282 P2d 621, 625 (1955). In addition, when, under a group insurance plan, the individual insurance certificates and the master policy are in conflict, the individual certificate is controlling. Exstrum v. Union Casualty Life Insurance Company, 167 Neb 150, 91 NW2d 632, 637-38 (1958).

was that the application be "approved by the Insurance Company." As stated in *Stringham v. Mutual Ins. Co., supra,* 44 Or at 457, the purpose of a stipulation in the application that a policy shall not become effective until the policy has been signed and issued is because "it is often difficult to determine when an offer has been assented to" and that when such a stipulation has been satisfied by the signing and issuance of the policy, "a delivery to the applicant is not necessary as an indication of such acceptance unless the parties should see fit to make it so."[8]

In this case, the application by Mr. Krause, dated October 18, 1965, was forwarded by Marsh & McLennan to the insurance company with a notation that the initial premium had not been paid and an individual certificate of insurance was nevertheless then prepared, certifying that Mr. Krause "is insured", and stating:

"Effective date November 1, 1965."

■ This certificate of insurance was then delivered to Marsh & McLennan. As previously stated, even delivery of an insurance policy by an insurance company to its own agent for delivery to the insured may be sufficient in Oregon to constitute delivery, where delivery is required, when such delivery is not conditional upon collection of the first premium.[9] But, as also previously stated, the unconditional delivery of a policy by an insurance company to an agent of the insured, including a broker representing the insured,

---

[8] Also, as stated in 43 Am Jur 2d 269, Insurance, § 212:
"If * * * the application provides that the contract shall be completed upon acceptance at the home office, such an approval completes the contract without communication of such fact to the insured."

[9] Morford v. California-Western States Life Insurance Co., *supra,* at 588.

is also sufficient. to constitute delivery, where delivery is required.[10]

From the record in this case it is clear that Marsh & McLennan were the insurance brokers who acted on behalf of ACHA not only in the development of a program for group life insurance for its members, but also in the administration of that program on behalf of ACHA and its members.

It is true that there was some evidence in this case that when an application for insurance was received without payment of the first premium, certificates for insurance would be made up by defendant "to save time", but that in such cases the certificates, upon delivery to Marsh & McLennan, were held by it until it had received payment of the first premium. There was also testimony, however, that "normally" in such cases the certificate of insurance would be forwarded by Marsh & McLennan to the insured with a letter billing him for the amount of the first premium. Indeed, questions relating to prepayment of premiums are often affected by the custom and course of deciding between an insurance company and its agents or brokers.[11]

In addition, in this case not only was the certificate dated "effective November 1, 1965", but the premium statement mailed by Marsh & McLennan to defendant on December 6, 1965, stated that the amount due for the first premium, $25.05, was for the period "11-1-65 to 2-1-66."[12] Furthermore, it is conceded by

---

[10] See note 6, supra.

[11] 1 Couch, supra, 404, § 9:37.

[12] As stated in 9 Couch, supra, 493, § 39:87, although insurance policies ordinarily are prospective in operation, they may be made retroactive.

In addition, policies may be issued and delivered, so as to be-

defendant that if that amount had been paid in response to that statement, the insurance would have become effective as of November 1, 1965, prior to the death of Mr. Krause.

Thus, for all of the foregoing reasons, we conclude that, under the terms of the master policy, the individual certificate and the application for insurance, payment of the first premium by an individual member was not a condition precedent to coverage and that there was substantial evidence to support a finding that the application of Mr. Krause for insurance was accepted by defendant, and that delivery of the individual certificate of insurance to the broker representing ACHA and its members, including Mr. Krause, was unconditional and satisfied any requirement for delivery of the policy.

Affirmed.

---

come effective, either under arrangements for subsequent payment of the initial premium or by waiving requirements for prepayment of such premium. See Cranston v. West Coast Life Insurance Co., 72 Or 116, 132, 142 P 762 (1914). See also 1 Couch, *supra*, 389, § 9:20.