William Gene NULL,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Director Division of Corrections,
Respondent-Appellee.

No. 74–1923.

United States Court of Appeals,
Fifth Circuit.

Feb. 19, 1975.

C. Anthony Sexton, Tampa, Fla. (Court-appointed), for petitioner-appellant.

Charles Corces, Asst. Atty. Gen., Richard G. Pippinger, Asst. Atty. Gen., Tampa, Fla., for respondent-appellee.

Before GEWIN and SIMPSON, Circuit Judges, and NICHOLS,* Associate Judge.

GEWIN, Circuit Judge:

A Florida court sitting without a jury found appellant Null guilty of carnally knowing a female child under the age of ten and sentenced him to life imprisonment. *See* Fla.Stat.Ann. § 794.01 (1965).[1] Appellant petitioned the state courts for reversal of his conviction through direct appeal and later via habeas corpus. When those efforts failed, he sought a federal writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied the petition on harmless error grounds and we affirm.

Appellant was babysitting with three neighborhood children, Carla, Billy and Robin Montgomery, and his stepson during the afternoon of February 18, 1968. While the other children played monopoly on the living room floor, appellant announced he and Robin (age six) were going into the bedroom for a nap. Though the child emerged momentarily to fetch a bottle of lotion at appellant's behest, she immediately returned to the bedroom where the two remained for an extended period. When they returned to the living room the child promptly told her siblings that the appellant had promised to buy her a new pair of shoes.

When Robin's mother returned to the Null home to pick up her children that evening, Robin was sitting on appellant's lap. Her mother noticed blood on the child's underwear and immediately asked what had happened. The six-year-old started to reply, but appellant interrupted her with the admonition, "We mustn't talk about that, Robin." Appellant then stated that Robin had fallen on a table in the bedroom.

It was not until much later that night that Robin recanted her prior rendition of events and told her mother exactly what had caused the bleeding. As stated *infra* the testimony of Robin at trial was clear, positive and unequivocal. When asked why she had not divulged the true cause earlier, the child explained that appellant had promised her a new pair of shoes if she would say she had fallen on the table. Incensed, the child's mother loaded her son's shotgun and headed for the Null home. Her husband restrained her, however, so she finally went to her minister's home nearby for help. The next morning Robin's mother called the police and they took the six-year-old to the hospital for examination. Robin had a first degree laceration of the posterior vaginal wall and other injuries to the vagina, wounds the doctors later testified were consistent with sexual intercourse and inconsistent with falling against a sharp object.

After confirming the child's story with medical personnel, police went to appellant's home and placed him under arrest. Officer Lambert then stated they would need the clothes he was wearing the day before, and appellant replied, "Well, these are the same clothes I had on yesterday." Appellant gave the police his clothing and his wife handed them the bed covers. Appellant faced trial on the charge of rape two months later.

---

* Of the U. S. Court of Claims, sitting by designation.

1. § 794.01 bears the title "Rape and forcible carnal knowledge", although the body of the statute refers to "carnally know[ing] and abus[ing]" a female child under the age of ten years. The parties before this court have used the terms "carnally know" and "rape" interchangeably. In employing the term "rape" we refer to the crime denounced in the body of the statute.

Appellant's sole contention on appeal is that the officers' failure to give the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966),[2] deprived him of rights so basic to a fair trial that his conviction should be reversed. The state argues, conversely, that police officers did not violate *Miranda's* safeguards or, alternatively, that any error in admitting evidence without the prescribed cautionary admonitions was harmless beyond a reasonable doubt.

[1] Now familiar to layman and lawyer alike, the *Miranda* decision delineated a set of warnings to be given the accused prior to official questioning. These include the right to remain silent, the instruction that any statement he makes may be used as evidence against him, and the right to the presence of an attorney, either retained or appointed. 384 U.S. at 467–479, 86 S.Ct. at 1624–1630, 16 L.Ed.2d at 719–726. The Supreme Court has recently made clear that *Miranda* itself did not establish substantive constitutional rights, but expounded a series of prophylactic rules designed to protect a citizen's Fifth Amendment right to be free from compulsory self-incrimination. Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

■ We cannot agree with the state's assertion that police abided by *Miranda's* safeguards when they visited appellant's home the day following the rape. In Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), the Supreme Court held that statements made by a suspect arrested in his own home without prior *Miranda* warnings were inadmissible because secured in violation of the Self-Incrimination Clause. Though the admissions obtained in *Orozco* were substantially more incriminating than appellant's statement concerning his clothing,[3] *Miranda* proscribes the use of any statements by the accused, whether inculpatory or exculpatory, gleaned without use of its prophylactic litany. Miranda v. Arizona, *supra,* 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. In the instant case appellant's remark that he was wearing the same clothes the previous day came as a direct response to a demand made by the arresting officer. *Cf.* Brown v. Beto, 468 F.2d 1284 (5th Cir. 1972). Appellant knew he was under arrest, and he had little choice but to succumb to their request. In these circumstances we hold that a *Miranda* violation occurred and admission of appellant's statement constituted error.

■ Appellee further urges that even if the court should not have allowed the introduction of appellant's statement, the tangible fruits of the admission—his clothing and bed covers—were nonetheless admissible. We note that the Supreme Court, when faced with the question whether *Miranda* requires the exclusion of fruits of statements taken in violation of its standards, declined to decide the issue. Michigan v. Tucker, *supra.*[4]

2. The facts and circumstances disclosed by the record under consideration differ greatly from those disclosed in the cases considered in Miranda v. Arizona. The appellant here was not subjected to continuous interrogation; he was only informed that the officers would need the clothing involved. He was not confined to an interrogation room at the police station; he was at home in familiar surroundings. The conversation between Officer Lambert and the appellant does not reveal either the physical or psychological coercion condemned by *Miranda.* When appellant's wife became somewhat hysterical at the time of his arrest, the officers departed and explained they felt it inappropriate to make further inquiries of the appellant due to the emotional state of his wife.

3. In *Orozco* police officers procured statements from the defendant that he had been at a particular restaurant that evening, that he owned a gun, and that he had left the gun in a washing machine located at the rear of his boardinghouse.

4. Justice Rehnquist, writing for a majority of the Court, refused to resolve the "fruits" question, in part because the defendant's Fifth Amendment rights were not jeopardized and in part because police had followed the pronouncements of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), applicable at the time Tucker was arrested. 417 U.S. at 445–450, 94 S.Ct. at 2365–2367, 41 L.Ed.2d at 194–197. Justice Brennan's concurrence was premised on the

We follow the High Court's lead. For purposes of our decision below we assume, without deciding, that the fruits of statements secured without Miranda's preventive measures are generally inadmissible.

Appellant submits that the teachings of *Miranda* are so enshrined in legal notions of fairness to the accused that the failure to give the warnings cannot be treated as harmless error. An examination of pertinent authorities belies such a view. Though some rights are so basic that their violation does not admit of harmless error treatment,[5] the Fifth Amendment as embodied in *Miranda's* procedural safeguards is not one of them. Several courts have held that in certain limited circumstances the failure to communicate the requisite warnings prior to questioning is harmless error. United States v. Hill, 430 F.2d 129 (5th Cir. 1970); United States v. Jackson, 429 F.2d 1368 (7th Cir. 1970); United States v. Harris, 140 U.S.App.D.C. 270, 435 F.2d 74 (1970); United States v. Sutt, 415 F.2d 1305 (7th Cir. 1969).[6]

■ The harmless error standard requires that a court be able to declare that the constitutional error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct.

824, 17 L.Ed.2d 705 (1967). If, upon its reading of the trial record, the appellate court is firmly convinced that the evidence of petitioner's guilt was overwhelming and that the trier of fact would have reached the same result without the tainted evidence, the conviction will stand. *See* Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

In the case *sub judice* the six-year-old victim delineated in graphic detail exactly what appellant did to her while they were in the bedroom alone. Her testimony, if believed, constituted ample and complete proof of every element of the crime charged. Moreover, other evidence presented fully substantiated her detailed account of what happened. Though none of the other children visually witnessed the rape, each corroborated the circumstances surrounding the episode, including appellant's announcement they were going into the bedroom for a nap, that Robin carried lotion into the appellant at his request, and that upon emerging from the bedroom she said appellant had promised to buy her a new pair of shoes. Given the inherently private, secretive nature of the crime,

assumption that *Miranda* required the exclusion of fruits. *Id.* 417 U.S. at 459, 94 S.Ct. at 2372, 41 L.Ed.2d at 202 n. 5. Justice White, on the other hand, wrote that *Miranda* applied only to statements by the accused and should not be extended to cover fruits. *Id.* 417 U.S. at 461, 94 S.Ct. at 2372, 41 L.Ed.2d at 203. Only Justice Douglas' dissent stated unequivocally that statements acquired in violation of *Miranda,* as well as the fruits obtained therefrom, should be excluded. *Id.* 417 U.S. at 462, 94 S.Ct. at 2373, 41 L.Ed.2d at 204. *See generally* United States v. Castellana, 500 F.2d 325, 327 n. 7 (5th Cir. 1974); The Supreme Court, 1973 Term: Self-Incrimination, 88 Harv.L.Rev. 197, 202 (1974).

5. *See* Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (impartial judge).

6. The dissenters in Harrington v. California, *infra,* complained that the majority's holding

permitted violations of *Miranda* to be treated as harmless. 395 U.S. at 255, 89 S.Ct. at 1729, 23 L.Ed.2d at 288 (Brennan, J., dissenting).

Moreover, there is authority for the conclusion that a failure to fully comply with the *Miranda* ritual does not authorize the exclusion of statements made by a suspect in all circumstances. In Michigan v. Tucker, *supra,* the Court stated:

This Court has already recognized that a failure to give interrogated suspects full Miranda warnings does not entitle the suspect to insist that statements made by him be excluded in every conceivable context.

417 U.S. at 450, 94 S.Ct. at 2367, 41 L.Ed.2d at 197. To support its conclusion the *Tucker* Court relied on Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), where the Court held that statements made by the defendant himself, without having been advised of his right of access to appointed counsel, could be used to impeach the defendant's direct testimony at trial.

lack of eyewitness testimony cannot be held fatal to conviction. The mother's statements concerning blood on her daughter's underwear were corroborated by their introduction into evidence. Finally, the doctor's unequivocal diagnosis of what caused the child's laceration virtually sealed the prosecution's case.[7]

Though the state also introduced various items of appellant's wearing apparel and bed clothing, the tangible evidence did not prove extremely damaging. FBI experts were able to match the child's blood to a stain on one bedsheet, but all the other articles contained stains too small for typing. Some fibers found on the victim's clothing were also identical to the wool in appellant's sweater. However, it was undisputed that Robin had spent some time sitting on the lap of appellant during the afternoon in question. Apart from these two physical links between appellant and the victim, the tangible evidence was inconclusive.

Appellant Null presented no testimony whatsoever to counteract the state's version of events, limiting his defense to cross-examination of opposing witnesses. He attempted to impeach the victim through utilization of prior inconsistent statements, but Robin and her mother testified that the child initially claimed to have fallen on the table in return for the promise of new shoes. Appellant's only remaining defensive theory was the suggestion that he obtained the lotion to facilitate removing sandspurs from Robin's feet, an explanation the court found implausible. In view of the overwhelming evidence of rape pointing toward appellant as the perpetrator, the court was amply justified in finding him guilty.

Moreover, we note that the trial was held before the court sitting without a jury. Strict evidentiary rules of admissibility are generally relaxed in bench trials, as appellate courts assume that trial judges rely upon properly admitted and relevant evidence. Community Action Group v. City of Columbus, 473 F.2d 966 (5th Cir. 1973); United States v. Compania Cubana de Aviacion, 224 F.2d 811 (5th Cir. 1955). The record in the instant case confirms the wisdom of such a rule. The trial judge's closing comments demonstrate that he placed little weight on the appellant's statement or the tangible evidence:

It's the court's feeling after [having] heard the evidence it's quite obvious that the child and the Defendant were in the bedroom together by the uncontradicted testimony and that from everything that was in evidence that

7. The examining physician at Tampa General Hospital testified as follows:

Q. In this examination will you please show the judge what you found and describe it for him, please?
A. I have described—I have described in my report a first degree laceration of the posterior distal vaginal wall at 6:00 o'clock which would be inside if you visualize the vagina going backward into the blackboard. That would be inside of this ring right about this position (indicating). There was a fresh bruise and a superficial laceration of the vulva externally and of the hymen at the region of 9:00 o'clock. The hymen was lacerated at 7:00 o'clock which is the ring here. And the whole area was red and [there] was light bleeding. The whole area was quite tender to the examination, it elicited pain.

* * * * * *

Q. Are your findings—would they be consistent or inconsistent with sexual intercourse?

A. They would be consistent.
Q. It's your testimony that there was penetration there?
A. I think it's consistent with penetration, yes, sir.
Q. And you're saying this within reasonable medical certainty?
A. Yes.

* * * * * *

Q. [cross-examination] Fall against a sharp object?
A. I don't think that would be consistent, no.
Q. What would be different? What would we find different from what you say you found there if the evidence were to show that this child had fallen against a sharp object?
A. Well, I'm not saying this isn't possible, I'm saying it's less typical. Something inserted in there would cause this type of stretching or tearing injury whereas just a fall usually doesn't produce this type.
(Tr. at 109–12).

whatever happened occurred in the bedroom. The only thing remaining is whether it is reasonable to believe that it could have occurred in any other manner than as stated by the various witnesses. There is no question within the Court's mind but what this particular type of injury could only have occurred in a manner in which [sic] was presented in the evidence in this case. (Tr. at 356–57).

To say the evidence against appellant was overwhelming understates the prosecution's case. The trial court could have found appellant innocent only if it disbelieved every witness who took the stand. Though we disapprove police officers' negligent failure to apprise appellant of his *Miranda* "rights", we are firmly convinced that the trial court would have reached the identical result even without consideration of all the arguably tainted evidence. The admission of evidence obtained without prior warnings, though erroneous, was therefore harmless beyond a reasonable doubt. Chapman v. California, *supra*.

The judgment is affirmed.