**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James John LAY, Defendant-Appellant.**

No. 80–1831
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 13, 1981.

Charles S. Szekely, Jr., Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Houston, Tex., for defendant-appellant.

James Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before AINSWORTH, GARZA and SAM D. JOHNSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant James J. Lay was convicted in district court of possession of 96 pounds of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The trial judge sentenced Lay to serve five years in prison and to a five-year special parole term. Lay appeals from the conviction, contending that the trial judge erroneously refused to permit him to testify about the bias of the key prosecution witness and about certain prior inconsistent statements made by that witness and erroneously denied the defendant's motion for a mistrial after the prosecutor questioned him about a prior offense for which he had not been convicted. Finding no errors which affect the substantial rights of the defendant, we affirm.

Lay and a companion, Richard T. Broussard, were stopped at a border checkpoint as they drove from Mexico into the United States near Sarita, Texas. The border patrol agent, noticing that Lay, who was driving, appeared nervous, asked him to open the trunk of the car. Lay told the agent that he did not have the key to the trunk. The agent then gained access to the trunk by removing the back seat of the car and found 96 pounds of marijuana in the trunk. The appellant and Broussard were arrested

and searched; the key to the trunk was hidden in Lay's sock.

At trial, Broussard was the key witness against Lay. Broussard testified that the marijuana transaction was Lay's idea and that they were jointly involved in the deal. Lay, on the other hand, testified that the car belonged to Broussard and that he knew nothing about the marijuana until Broussard told him about it just before they reached the border. Lay testified that Broussard had made statements to him which contradicted Broussard's testimony. The prosecutor objected to any further questioning of Lay about Broussard's prior inconsistent statements or his motives in testifying against Lay, and the trial judge sustained the objections.[1] Later, during cross-examination, the prosecutor asked Lay about three prior drug-related convictions and then asked him about an armed robbery charge which Lay denied.[2] Counsel

---

1. The following exchange took place:
   Q. Did you all talk together driving back from the checkpoint to the jail?
   A. Yes, sir, I guess I talked to him. I talked to him mostly in the jail. He told me that as soon as the Federal agents got there he would get it straightened out.
   Q. Did you ask him to get it straightened out?
   MR. BERG [The Prosecutor]: Your Honor, none of this is relevant. It's after the arrest. It is nothing in the world except trying to bolster this witness's testimony in connection with the actual offense itself.
   THE COURT: I will sustain the objection.
   Q. (By Mr. Acevedo) [The defense counsel] Did you have a fight—I believe it was testified to—
   MR. BERG: That's the same thing, Your Honor, again, he is attempting to bolster this witness's testimony in connection with—
   THE COURT: I can't see the relevance of it. I will sustain the objection.
   Q. (By Mr. Acevedo) Can you tell us why Mr. Broussard was testifying in the fashion that he did against you, saying that you were the one, that it was your connection, it was your marijuana, and it was your money, and that the car had even been parked in front of your house for several weeks? Could you tell the jury why Broussard would say this about you?
   A. Well, he kept on, at first he was talking about seeing the DEA—
   MR. BERG: Your Honor, if he knows something specific, I'm not going to object to it, but if he is going to hypothesize and conjecture about something—
   A. Yes, sir, I got something specific, Mr. Acevedo.
   THE COURT: Just what you actually know.
   A. I got something specific.
   Q. Yes, sir?
   A. He went and seen a lawyer and came out and told me that his lawyer said he shouldn't do nothing.
   MR. BERG: Oh, wait a minute. That's just hearsay on top of hearsay, Your Honor.
   A. It's hearsay, but it happened, Mr. Berg.
   MR. BERG: That's what you say.

THE COURT: Well, no, we're not going to have any of that. I'm going to sustain the objection. Has no relevancy. This is all subsequent to—
MR. ACEVEDO: Your Honor, if it would shed any light on the motive for the witness to testify and show any prejudice or bias by the witness to testify against him, I think it is probably admissible, Your Honor, if there is some bad feeling between them and a reason for it, I think the jury might want to hear it.
THE COURT: Well, I've already ruled on it, Mr. Acevedo.
T. 170–72.

2. The cross-examination proceeded as follows:
   Q. Well, let's find out what you did do. Let's find out what you did do. You are the same James John Lay, Jr., who was convicted on May 20, 1969, for possession of a narcotic substance and sentenced to two and a half years in the penitentiary in Louisiana, aren't you?
   A. Yes, sir, I am.
   Q. You did do that, you are the same James John Lay, Jr., aren't you?
   A. Yes, sir, I am.
   Q. All right, and you are the same James John Lay who was convicted on July 25, 1969, for possession of marihuana and sentenced to five years, aren't you?
   A. Yes, sir.
   Q. And you are the same James John Lay who was convicted on February 27th of 1970 for attempted possession of narcotics and sentenced to five years, aren't you?
   A. No, sir, I was sentenced to two and a half years.
   Q. Two and a half years on that one?
   A. Yes, sir.
   Q. Excuse me. And you did that?
   A. Yes, sir.
   Q. And you are the same James John Lay who was convicted in New Orleans, Louisiana, on June 20, 1972, for armed robbery, aggravated assault—
   A. No, sir.
   Q. —aggravated burglary?
   A. No, sir.
   Q. Huh? No? Excuse me.

for the defendant then requested a mistrial on the grounds that the prosecutor had questioned the defendant about an offense which had not led to a final conviction. The court denied the motion for mistrial, offered to give any corrective instructions suitable to the defendant, and acceded to the defendant's request not to have any instruction at all given.[3] The prosecutor then asked the defendant about an additional conviction, for sale of heroin in 1972, for which he was sentenced to serve sixty years in prison.[4]

█ The district judge excluded Lay's testimony about Broussard's statements and motives for two stated reasons: the testimony would relate to events which occurred after the commission of the crime and would therefore not be relevant, and reports of Broussard's statements would be hearsay. Neither of these reasons is appropriate. Lay apparently would have testified about statements made by Broussard after his arrest which were inconsistent with his trial testimony. Such statements are not offered to prove the truth of the matter asserted, but instead to cast doubt on the trial testimony in light of the inconsistency. They are therefore not hearsay. *United States v. Sisto,* 534 F.2d 616, 622–23 (5th Cir. 1976); Fed.R.Evid. 801(c).[5] Under the Federal Rules of Evidence, extrinsic evidence of prior inconsistent statements of witnesses is admissible only if the witness is afforded an opportunity to explain or to deny making the prior statements. Fed.R. Evid. 613(b). Broussard was questioned about the statements he allegedly made to Lay and he denied making them. Thus, Lay's testimony, a form of extrinsic evidence, was admissible to impeach Broussard. That the statements were made after the crime is no bar to their admissibility; in fact, such statements are frequently made after the crime. *See, e. g., United States v. Maddox,* 492 F.2d 104 (5th Cir.), *cert. denied,* 419 U.S. 851, 95 S.Ct. 92, 42 L.Ed.2d 82 (1974). Lay's testimony may very well have been inadmissible as part of the defendant's case-in-chief, but it was admissible for impeachment purposes and the trial judge erred in excluding the testimony.[6]

█ Although the trial court erred in excluding Lay's testimony, the error was harmless. It is inappropriate to reverse a lower court conviction on account of errors which do not affect the substantial rights of the party asserting that error. 28 U.S.C. § 2111; Fed.R.Crim.P. 52(a). To determine whether an error in a criminal case is harmless, we must examine "whether there is a reasonable possibility that the [error] might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). *See also Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1966). After examining the record as a whole, the appellate court must be convinced beyond a reasonable doubt that the error was harmless. *Chapman v. California, supra,* 386 U.S. at 24, 87 S.Ct. at 827; *Null v. Wainwright,* 508 F.2d 340, 343 (5th Cir.), *cert. denied,* 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1975).

---

T. 186–87. After the defense counsel moved for a mistrial and the jury was removed from the courtroom, the prosecutor stated that he did not realize that the charge had not resulted in a final conviction and that he had misread the defendant's record.

3. Lay's attorney apparently believed that any instruction would merely emphasize the misinformation in the jury's mind.

4. Lay was released under a supervised earned release program after serving five and a half years.

5. *See also* Notes of the Senate Judiciary Committee, S.Rep.No. 1277, 93d Cong., 2d Sess.,

*reprinted in* [1974] U.S.Code Cong. & Ad.News 7051, 7062:

Rule 801 defines what is and what is not hearsay for the purpose of admitting a prior statement as substantive evidence. A prior statement of a witness at trial or hearing which is inconsistent with his testimony is, of course, always admissible for the purpose of impeaching the witness' [sic] credibility.

6. In *United States v. Maddox, supra,* this court ruled that a statement made after the termination of a conspiracy by one of the conspirators was inadmissible as part of the case-in-chief against another of the conspirators but was admissible for impeachment purposes. 492 F.2d at 107–08.

It is perhaps easier to assess whether an error is harmless when the error consists of the erroneous admission of evidence; the appellate court merely examines all of the other evidence to see "whether the trier of fact would have reached the same result without the tainted evidence . . . ." *Null v. Wainwright, supra*, 508 F.2d at 343. In a case such as the present one, where the trial judge erroneously excluded evidence, we must first determine what that evidence would have been and then determine whether the trier of fact would have found the defendant guilty beyond a reasonable doubt with the additional evidence inserted. The appellant maintains that the defendant would have testified about prior statements made by the key prosecution witness and about the motivation of the witness in testifying against the defendant. Even without Lay's testimony, it was clear to the jury that their verdict depended on whether they believed Lay or Broussard. During cross-examination, Broussard denied making the statements Lay was prepared to testify about. Lay did testify that Broussard told him at the border checkpoint, "Please, man, don't say nothing. I'll straighten this out," and that he later promised to "get it straightened out." The testimony of Broussard and Lay made it clear that they were each accusing the other of initiating the marijuana transaction and of lying on the stand in testifying to the contrary. Additional testimony would have been cumulative. Examining the record as a whole, we are convinced beyond a reasonable doubt that the jury's decision would not have been different had the judge permitted Lay to testify to other similarly incriminating statements Broussard allegedly made.

The appellant's brief does not indicate that Lay would have testified to any specific new matters of bias or motive not already in the record. Other than the inclination of one codefendant to try to shift the onus of the crime to another, and thus perhaps lessen his own liability, we are told of no other specific reasons why Broussard would falsely testify against Lay. It is interesting to note that although the Government called Broussard as its witness, it did not intend to use Broussard at trial until Lay's attorney requested that he be made available at the trial. That request came just two days before Broussard testified. There is no evidence here, and no concrete allegation, that Broussard was given any special treatment by the Government in return for his testimony against Lay. The jury had already been made aware of the potential bias inherent in the relationship between Broussard and Lay as codefendants. A trial judge has considerable discretion to limit cumulative evidence of bias. *United States v. Diecidue*, 603 F.2d 535, 550 (5th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980). Having been made aware of no new allegations of bias or bad motive, we find no error in excluding additional bias testimony. Even if it had been error to exclude the testimony, we are convinced beyond a reasonable doubt that the error was harmless and the jury verdict would not have been different had the cumulative testimony been admitted.

Appellant is correct in asserting that it was improper for the prosecutor to question the defendant about a prior criminal charge which did not result in a final conviction. In light of the overwhelming evidence against the defendant, and especially in light of the four serious drug-related convictions which were properly brought to the jury's attention, we hold that the prosecutor's brief and inadvertent misstatement was harmless beyond a reasonable doubt. *Cf. United States v. Underwood*, 591 F.2d 102 (5th Cir. 1979); *United States v. Evans*, 572 F.2d 455 (5th Cir.), *cert. denied*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1979); *United States v. Klein*, 546 F.2d 1259 (5th Cir. 1977). Moreover, if any harm was done by mentioning the charge it could have been corrected by an instruction to the jury. Defendant's counsel refused the court's offer to make any corrective instruction suitable to the defendant. Since any slight prejudice could have been cured by the very jury instruction the defendant requested not be made, we cannot now allow

such clearly harmless prejudice to be grounds for reversal.

AFFIRMED.