**WILMINGTON TRUST COMPANY, individually and Curtin Winsor, Jr., as Co-Trustee under Trust Agreement Elizabeth D. Norment, Plaintiffs-Appellees, Cross-Appellants.**

v.

**The MANUFACTURERS LIFE INSURANCE COMPANY, a foreign corporation, Defendant-Appellant, Cross-Appellee.**

Nos. 82–6080, 83–5519.

United States Court of Appeals, Eleventh Circuit.

Jan. 3, 1985.

Shutts & Bowen, Phillip G. Newcomm, Sally M. Richardson, Miami, Fla., for defendant-appellant, cross-appellee.

Edna L. Caruso, Montgomery, Lytal, Reiter, Denney & Searcy, West Palm Beach, Fla., for plaintiffs-appellees, cross-appellants.

Before TJOFLAT and VANCE, Circuit Judges, and ATKINS [*], District Judge.

ATKINS, District Judge:

Wilmington and another, (hereinafter Wilmington), as co-trustees, brought this action against Manufacturers to recover as beneficiaries the proceeds of a policy insuring the life of Joseph D. Winsor and attorneys' fees under Fla.Stat. § 627.428. Manufacturers denied liability (except for premiums paid) because of (a) suicide by the insured within one year of the issuance of the policy and (b) a false answer by the insured as to his prior aviation activity. Manufacturers counterclaimed for rescission.[1] The district court struck the claim for attorneys' fees on the ground that the

---

[*] Honorable C. Clyde Atkins, U.S. District Court Judge for the Southern District of Florida, sitting by designation.

1. Wilmington sued Manufacturers in Florida state court. Manufacturers removed the case to the United States District Court for the Southern District of Florida under 28 U.S.C. § 1441(a) because of diversity and the amount involved.

policy was not delivered, nor issued for delivery in Florida. In bifurcated trials on the issues of rescission and suicide, jury verdicts were rendered in favor of the beneficiaries. Manufacturers urges error in the trial court's (1) refusal to specify certain facts of Winsor's aviation activity as undisputed pursuant to Fed.R.Civ.P. 56(d),[2] (2) permitting impeachment by the beneficiaries of the specified facts, (3) giving a jury instruction on the requirement of more precise disclosures, (4) admitting the testimony of insurance agent Bernstein as to his experience in the issuance of policies by other companies on applicants with passenger flight activity, (5) admitting Manufacturers' underwriting files in evidence, and (6) admitting a prior inconsistent hearsay statement in rebuttal without complying with Fed.R.Evid. 613(b). Manufacturers also asserts that it was irreparably prejudiced by Wilmington's improper comment in final argument and the evidence was insufficient to support the jury verdict in the suicide trial. Wilmington cross-appealed from the order striking its claim for attorneys' fees, urging that the insurance policy was solicited in Florida, where the application was filled out and was purchased by the insured in Florida.

We find no error in the rulings by the trial court. The comment in final argument was not improper. The verdicts were supported by the evidence. We affirm the judgment and the order striking attorneys' fees.

### The Posture After Remand

■ Pursuant to Fed.R.Civ.P. 56(d), on Manufacturers' motion, the district court

specified certain facts as undisputed which had been previously set forth in the order granting summary judgment. These particularized Winsor's flight activity from 1972 "through his death," the falsity of his declaration on the application, and recited that Winsor died of gunshot wounds in 1976,[3] unrelated to "any risk normally associated with the hazards of aviation activity." The Court properly denied Manufacturers' request to specify as undisputed other facts as either irrelevant or involving the issue of credibility. Manufacturers did not present evidence at the trial as to these facts although it was not precluded from doing so.

The Court also ordered a separate trial of the rescission issue.

We find no error in the Court's refusal to specify the other facts as requested by Manufacturers.

### The Rescission Trial

■ At the trial of the rescission issue Manufacturers failed to present any evidence outside the specified facts regarding Winsor's flight activity. Manufacturers requested the Court to prohibit plaintiffs from presenting additional evidence. The Court ruled that the specified facts were merely facts established that did not need further proof; that the specified facts merely set the parameters, but that the Court never intended to bar other evidence.

Manufacturers' only witness at the rescission trial was John Cummins, Manufac-

---

2. The trial court entered summary judgment on the counterclaim finding that Winsor had flown as "pilot or passenger" on non-scheduled flights and therefore in answering question No. 4 on the application in the negative, he had misrepresented his past and expected non-scheduled flight activity. The trial court relied upon the testimony of John L. Cummins, Manufacturers' Assistant Vice President of Underwriting, in concluding that had Manufacturers known of Winsor's non-scheduled flight activity it would not have issued the policy without an aviation exclusion, and therefore the failure to disclose this non-scheduled flight activity was material to the risk. The Fifth Circuit reversed. *Wil-*

*mington Trust Co. v. Manufacturers Life Insurance Co.,* 624 F.2d 707 (5th Cir.1980). In reversing, the Court found that Winsor's negative response to question No. 4 was false but that a genuine issue of material fact existed as to the "materiality" of such an answer since Cummins' credibility was in issue.

3. Wilmington strongly objected to specification of any fact other than Winsor's having answered "No" to Question No. 4. Wilmington urges the Court erred in the facts it specified because they were argumentative and based on disputed evidence.

turers' Assistant Vice President of Underwriting. He had the ultimate responsibility for approving or rejecting Winsor's application. He reiterated that underwriting is subjective and that while aviation guidelines are utilized, they do not dictate his decision. Cummins testified that if he had known of those facts specified by the Court, he would not have issued the policy without an aviation exclusion.

Cummins further testified that the factors he considers in determining whether to exclude aviation activity are the insured's health, the pilot's safety record, type of aircraft, the aircraft maintenance, the number of hours flown a year, the landing field quality, the weather and terrain flown in, and the type of flying. Cummins admitted that his source of this information is threefold: the application, the aviation questionnaire, and the inspection report.

A review of these documents reveals that they do not disclose the information which Cummins testified he must consider in determining whether a standard policy will be issued. There is only one question on the application that discloses anything about aviation activities. Question No. 4 asks whether the applicant has flown in the last two years or expects to fly in the future as a student pilot, pilot, or crew member, or as a passenger on a non-scheduled flight. If the question is answered affirmatively, a questionnaire indicating the hours flown per year is filled out by the applicant. The questionnaire asks no other questions about the applicant's flight activity. If an applicant answers question No. 4 "Yes," a standard inspection report is also filled out by Equifax, a company that does investigation of applicants for insurance companies. The only portion of that report concerning flight activity is a narrative section dealing with "aviation sports, avocation," referring to piloting of aircraft, parachuting or hot air ballooning, not passenger flying.

Cummins admitted that standard policies are issued for many aviation activities. The issue is whether the increase in the risk of death attributable to aviation activities is sufficiently great. Cummins admit-

ted that his company's guidelines do not consider helicopters to be more dangerous than airplanes; that in the absence of extraordinary circumstances, commercial airline pilots, a private pilot flying 200 to 300 hours a year, and a fully qualified helicopter pilot would all be issued standard policies; and that passenger flying that did not involve exorbitant hours of unusual types of flying did not present any aviation hazard requiring less than a standard policy.

Cummins was cross-examined concerning certain of Manufacturers' files relating to applicants as to whom an aviation risk was presented. Manufacturers complains that since these were not Cummins' files, they were not a proper subject of cross examination. We disagree. These files were relevant to the issue of materiality and reliance and the information Cummins said Manufacturers needed to evaluate a risk.

Manufacturers complains that the Court committed error in permitting Wilmington to urge that Winsor never flew as a pilot. This was an issue left open by the specified facts. Manufacturers never presented at trial, although it was free to do so, any evidence that Winsor flew as a pilot.

### The Jury Instruction on More Precise Disclosures

Over Manufacturers' objection, the jury was instructed:

In proving the materiality of a statement on an insurance application an insurer is barred from requiring more precise disclosures about the insured after his death than were sought during his lifetime.

Manufacturers challenges the giving of this instruction as being unsupported by the evidence. The evidence showed that if question No. 4 was answered "Yes" by an applicant, he was required to fill out a questionnaire which only inquired as to the number of hours flown per year. In addition, an Equifax standard report would be filled out. The report contained a narrative section on "aviation sports, avocation," which pertained to piloting, parachuting, et cetera. An Equifax

employee testified that they never asked applicants about passenger flying when inquiring of aviation sports as an avocation.

Therefore, had Winsor answered Question No. 4 on the application "Yes," the only information Manufacturers would have elicited was the number of hours per year that Winsor flew as a passenger. His answer would, therefore, not have revealed information allowing Manufacturers to require an aviation exclusion. Manufacturers' own files and Cummins' testimony indicated that aviation exclusions were not required for passenger flying, and that applicants who flew many more hours than Winsor were issued policies without aviation exclusions.

The "disclosure" jury instruction was applicable because Cummins testified that it would have been necessary for him to have information regarding the type of aircraft Winsor flew, the pilot's health, the aircraft maintenance, the landing fields used, et cetera, in order to evaluate the risk. The evidence showed that Manufacturers never elicited this information from its applicants. The instruction informed the jury that Manufacturers was barred from claiming that Winsor was required to disclose this information since it would not have been disclosed if Winsor had answered Question No. 4 correctly.

The instruction comported with Fla.Stat. § 627.409(1)(c). This statute precludes rescission unless the insurer would not have issued the policy "if the true facts had been made known to the insurer" as required by the "application ... or otherwise."

We find no error in the giving of the challenged instruction.

### The Testimony of Bernstein

█ Manufacturers likewise objected to testimony of Richard Bernstein, an insurance broker, regarding his experience in issuance of policies where the applicant had disclosed passenger flight activity. This was relevant to the issue of materiality and in impeachment of Cummins. *See Wallace v. World Fire & Marine Ins. Co. of Hartford, Connecticut,* 70 F.Supp. 193 (S.D.Cal.

1947), *aff'd,* 166 F.2d 571 (9th Cir.1948); *Stone v. Those Certain Underwriters at Lloyds,* 81 Ill.App.3d 333, 36 Ill.Dec. 781, 401 N.E.2d 622 (1980).

We find no error in this ruling by the district court.

█ In this phase of the proceeding it was for the jury to determine (a) whether Winsor's false answer to Question No. 4 was material to Manufacturers' acceptance of the risk or the hazard assumed by it, or (b) whether Manufacturers in good faith would not have issued the policy or would have excluded coverage. By its verdict, the jury found that Winsor's answer was not material. There was ample evidence to support the verdict. We affirm.

### The Suicide Trial

While this disputed issue was clearly one for resolution by the jury, Manufacturers assails its validity, urging certain errors.

### (1) The Possibility of Homicide

█ Manufacturers argues that "Wilmington took every opportunity to introduce into the minds of the jury the possibility of homicide." While all of Wilmington's experts considered homicide, they rejected it and concluded that the shooting was accidental. This was part of their ideology in arriving at the conclusion that Winsor's death was an accident. Experts are entitled to give the reasons for their opinions and to explain how and why they arrived at that result. Fed.R.Evid. 705. The homicide testimony was admissible and its admission was not error.

### (2) The Admission of Impeachment Testimony in Rebuttal and Use in Argument

█ Manufacturers' chief witness on Winsor's state of mind was Henri Bealem (Bealem) who, according to Winsor's first wife, was one of Winsor's closest friends. Bealem testified, among other things, that Winsor had discussed suicide on various occasions, including a hunting trip in Octo-

ber 1975. During that hunting trip, Winsor told Bealem things had gotten bad enough that he had considered suicide.

Over Manufacturers' objection, Wilmington was permitted in rebuttal to present the testimony of Brodie Henson (Henson) as to an out of court statement made by Bealem to Henson regarding an argument that Bealem supposedly had with Winsor on the hunting trip in October of 1975. Henson testified:

A. Well, it seems on this hunting trip Henri told me this, after he returned, that he and Joe got into a violent argument over the shooting of an elk, and he was very mad when he came back.

Q. At Joe?

A. At Joe, yes.

Q. Did he state how they flew back?

A. It was my understanding they flew separately.

Manufacturers contends that the admission of this testimony was error because it was hearsay and no predicate had been laid for this impeachment by extrinsic evidence.

The admissibility of this testimony is governed by Fed.R.Evid. 613(b). *United States v. Lay,* 644 F.2d 1087 (5th Cir.1981), *cert. denied,* 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed.2d 172 (1981). While the rule provides that the witness be afforded an opportunity (unless "the interests of justice otherwise require") to explain or deny and the opposite party to examine on the statement[4] there is no specification of any particular time or sequence for this foundation requirement. *See United States v. Barrett,* 539 F.2d 244, 254–56 (1st Cir.1976); S. Saltzburg & K. Redden, Federal Rules of Evidence Manual at 430 (3d ed. 1982). Thus, it is clear that Henson could be permitted to testify about the conversation with Bealem prior to Bealem's being given an opportunity to explain or deny that conversation. *United States v. Bibbs,* 564

F.2d 1165, 1169–70 (5th Cir.1977); *United States v. Barrett,* 539 F.2d at 254–56; *see* 3 J. Weinstein & M. Berger, Weinstein's Evidence § 613.(04) at 613–16 n. 6 (1981).

Manufacturers could have requested that Bealem be allowed to testify in surrebuttal concerning this conversation or to reopen its case. This was not done and by that failure the provision for confrontation was waived.

Manufacturers also complains about Wilmington's comment in closing argument on Bealem's credibility.

We find no error in the admission of this testimony or in the comments during final argument.

### Conclusion

■ The disputed issues of rescission and suicide were clearly for resolution by the jury. There was ample evidence to support the respective verdicts and no errors occurred in the proceedings below.

We affirm the verdicts.

### THE CROSS–APPEAL

Florida Statutes § 627.428, providing for an award of attorneys' fees to successful beneficiaries in a suit on an insurance policy, applies only to policies delivered, or issued for delivery, in the State of Florida. Fla.Stat. § 627.401. Delivery has been defined as "actual physical delivery." *Celanese Coatings Co. v. American Motorists Insurance Co.,* 297 F.Supp. 598, 600 (S.D. Fla.1969).

Winsor did not purchase the policy in Florida or anywhere else. Wilmington Trust Company purchased the policy in Delaware. The policy was issued at Manufacturers' home office in Toronto, Canada. It was then mailed from Toronto to the insurance broker, Pennock, for delivery to, and at the express instructions of the owner, Wilmington Trust Company, in Dela-

---

4. Wilmington points out that "Bealem had given a written statement years prior in which he never mentioned the fact that Winsor had talked of suicide."

ware. On March 19, 1975, J. Christopher Bell, on behalf of Wilmington Trust Company, Wilmington, Delaware, wrote to Pennock confirming:

> We enclose herewith the signed application for a $1,000,000 term policy insuring the life of Joseph D. Winsor, for which the Wilmington Trust Company, as Trustee of the above-captioned trust, will be both owner and beneficiary.

> We assume that in due course you will notify us of the amount of premium due and that the policy when issued will be forwarded to us for retention.

Wilmington Trust retained the policy in Delaware, and Winsor apparently never even saw the policy.

We are not dealing here with constructive delivery for purposes of establishing the existence, i.e., coverage, of a valid contract. *See e.g., Prudential Insurance Company of America v. Latham,* 207 So.2d 733 (Fla. 3rd DCA 1968); *Krause v. Washington National Insurance Co.,* 255 Or. 446, 468 P.2d 513 (1970). The issue for determination is where the policy was "delivered" for the purpose of recovering attorneys' fees. Fla.Stat. § 627.428. *See Morrison Grain Company, Inc. v. Utica Mutual Insurance Company,* 632 F.2d 424 (5th Cir.1980).

The owner and beneficiary of the policy was Wilmington to whom the policy was to be delivered "for retention."

The statutory provision for an award of attorneys' fees is in the nature of a penalty, and must be strictly construed. *Celanese Coatings Co. v. American Motorists Insurance Co.,* 297 F.Supp. at 600 (citing *American National Ins. Co. v. de Cardenas,* 181 So.2d 359 (Fla. 3rd DCA 1965)).

We hold the policy was issued for delivery and delivered to the owner in Delaware. The order striking Wilmington's claim for attorneys' fees is affirmed.

AFFIRMED.