Argued and submitted April 22, reversed and remanded June 8, reconsideration denied
July 22, petition for review denied September 20, 1983 (295 Or 631)

# TRANSPORT INDEMNITY COMPANY,
*Appellant,*

*v.*

# BB&S, INC., dba RED
# BARON RESTAURANT,
*Respondent.*

(81-0701-NJ-1; CA A26185)

664 P2d 1115

Michael A. Lehner, Portland, argued the cause for
appellant. With him on the briefs were Margaret H. Leek
Leiberan, and Mitchell, Lang & Smith, Portland.

Philip R. McConville, Eugene, argued the cause for respondent. With him on the brief was Flinn, Brown & Roseta, Eugene.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff Transport Indemnity Company (Transport) appeals from a summary judgment for defendant BB&S, Inc. in this action for contribution and indemnity. We reverse and remand.

BB&S operates a restaurant at which two patrons became intoxicated and, as a result, caused the death of Carl Hill in an automobile accident. Janet Grace Hill, as personal representative of her husband's estate, brought a wrongful death action against several defendants, including BB&S and the employer of the intoxicated men. Transport is the insurer of the employer.[1]

Before Mrs. Hill brought the action, she entered into a "loan receipt" agreement with Transport whereby Transport "loaned" the estate $250,000, which was "repayable only to the extent of any net recovery" the estate obtained for the wrongful death from persons other than Transport's insured. The estate also agreed in the loan receipt that it would bring any actions Transport deemed necessary and that Transport would have control over prosecution of the actions.

While the wrongful death action was pending, a separate action was slowly working its way through the federal courts. The issue in the federal case was whether Transport or another insurer was on the risk for any liability the insured incurred for Hill's death. Transport's efforts to stall the trial of the wrongful death action until the federal courts reached a decision in the other action were unavailing and, on July 20, 1979, the court notified the parties that the wrongful death action would be dismissed for want of prosecution unless cause for not dismissing it was shown within 60 days.

On July 30, 1979, Mrs. Hill executed a release on behalf of the estate, agreeing that, in consideration of a payment to her by Transport on behalf of its insured, the wrongful death action could be dismissed with prejudice as to all the

---

[1] At the time of the accident the two men were employed by different corporations. Subsequently, the employers were merged into a new corporation. Transport alleges in this action that its insured "was legally at fault for the death of Hill because of the actions" of both employes.

defendants.[2] The release also recited that it reserved to Transport and its insured "all rights to contribution or indemnity against any third party." The action was dismissed on the estate's motion the day after the release was executed. Transport's present action was filed in March, 1981.

BB&S moved for summary judgment on two grounds. The first was that Transport's interest in the underlying wrongful death action was governed by and fully exercised under the loan receipt and that Transport

"* * * is, therefore, precluded from revoking that agreement and bringing a subsequent action againt BB&S based upon its purported subrogation rights [under the release]."

The second ground was that Transport is barred by *res judicata* from bringing this action, because the wrongful death action against BB&S, over which Transport had control pursuant to the loan receipt, was dismissed with prejudice.

■ As relevant here, the principal difference between a loan receipt and a release is that the former generally gives an insurer a right to control litigation *brought in the "borrower's" name* and to be "repaid" from any recovery the borrower obtains, while the latter subrogates the insurer to the rights of the releasor and gives the insurer the capacity *to bring in its own name the action the releasor could have brought. See Furrer v. Yew Creek Logging Co.,* 206 Or 382, 292 P2d 499 (1956), where the court said:

"The insurer may have an action against defendant only if it makes an outright payment to plaintiff and becomes thereby subrogated to plaintiff's rights. * * * If the insurer prefers to forego that right and to substitute for it a contract right against plaintiff, defendant need have no fear of an action by the insurer, for it will have none. The insurer cannot make a loan and claim to be subrogated, and unless it can show a right by subrogation it cannot harass defendant by an action on the claim.

---

[2] The proceeds for Transport's payment were obtained from the earlier "loan" and were transmitted through an escrow arrangement. Although the parties attach some importance to the escrow in connection with the issues presented by this appeal, we do not.

"Of course, defendant is entitled to assurance that it will be required to defend against this claim only once, and that payment to plaintiff will, as to it, finally settle the matter. However, this is the extent of the interest which defendant may have in any agreement of this kind, made, as it is, between two other parties who are free to contract in any lawful manner concerning their business. If plaintiff chooses to take something less than the absolute payment to which he is entitled under this policy, that is his affair, and defendant's only proper concern is that payment to plaintiff is the only one which will be required of it.

"The reason why these parties chose to adopt this arrangement is immaterial so far as defendant is concerned, for he is properly concerned with only one effect of it—the location of the title to the cause of action.

"Indeed it would be difficult for the insurer to claim that it could bring this action after it has procured a document such as this. The entire tenor of the loan receipt shows that the insurer intended that the title to the claim should remain in plaintiff. To be sure, the insurer will have some interest in the fund recovered, but the interest will come not from a subrogation because of a payment it has made, but from the agreement which it has entered into with plaintiff * * *." 206 Or at 388-89. (Citations omitted.)

BB&S relies on the first and last of the quoted paragraphs from the *Furrer* opinion and argues:

"* * * [Transport] then claims that because Transport was reluctant to have the [wrongful death] case proceed to trial, it chose to attempt to trade its rights under the loan receipt agreement for subrogation rights under the release agreement. Based upon the Supreme Court's language in *Furrer,* supra, Transport was not entitled to make this 'switch.' Transport was precluded from attempting to transfer that cause of action from the Hill estate to itself having initially chosen, for whatever reasons, to enter into the loan receipt agreement. Transport, therefore, has no claim for contribution or indemnity against BB&S * * *."[3]

■ BB&S's argument does not follow from the language in *Furrer* on which it relies. There was no question raised in

---

[3] We understand BB&S to mean that, *as a matter of law,* Transport is barred from changing the source and nature of its interest in the wrongful death action. We do *not* understand BB&S to be suggesting for any *factual* reason that the release never became the effective governing agreement between Transport and the Hill estate.

*Furrer* about whether an insurer could "switch" from a loan receipt-contract arrangement to a release-subrogation arrangement. More fundamentally, the concern in *Furrer* was that a defendant not be required to defend against or pay the *same underlying* claim more than once, or not be required to have to watch the injured party *and* the insurer to see which direction the attack is coming from. In this case, however, BB&S is now confronted with a *separate* claim for contribution, not a second action on the underlying claim. Regardless of the role Transport played in the wrongful death action and of whether that role was governed by a loan receipt or a release, a subsequent action for contribution by Transport against BB&S would have been a possibility if Transport, on behalf of its insured, paid a disproportionate share of the total liability. *See* ORS 18.440(4), 18.450. Given that fact, BB&S has even less interest in the nature of the contract between Transport and Mrs. Hill than the defendant in *Furrer* had in the contract between the insurer and the plaintiff.[4] We therefore find no merit to the first argument BB&S makes in support of the judgment.

█     We also reject BB&S's argument that this contribution action is barred by *res judicata,* based on the dismissal of the wrongful death action. BB&S's contention is that a joint tortfeasor whose full settlement with the plaintiff results in the dismissal of the action as to all the defendants is estopped by that dismissal from seeking proportionate contribution for the settlement from the other defendants.

The only authority we find which lends arguable support to that contention is *Blackledge v. Harrington,* 291 Or 691, 634 P2d 243 (1981), a case BB&S does not cite. The defendants in *Blackledge* brought a third party action for contribution against an alleged joint tortfeasor who had prevailed in an earlier action by the plaintiff to recover for the same injury. The court based its holding on the provision of ORS 18.440(1) that "[t]here is no right of contribution from a person who is not

---

[4] We do not imply that Transport could not have waived its contribution or indemnification rights against BB&S by agreement with Mrs. Hill, the insured or, for that matter, BB&S. However, BB&S has no legal basis for insisting that Transport agree to waive those rights.

liable in tort to the claimant" and ruled that the earlier judgment was conclusive in favor of the third-party defendant on the question of liability to the plaintiff.

This case is distinguishable from *Blackledge*. Here, the judgment of dismissal in the underlying wrongful death action was entered *solely* because Transport settled the estate's claim against all of the defendants.[5] There was no determination on the merits that BB&S was not liable in tort to the estate. In our view, the reasoning of *Blackledge* cannot be extended to these facts without making the contribution statutes internally inconsistent.

ORS 18.450(1) permits a "separate action" for contribution by one tortfeasor against another, whether or not judgment has been entered against them. ORS 18.440(3) provides:

> "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what is reasonable."

Hence, a tortfeasor whose settlement does not satisfy the plaintiff's claim against other tortfeasors cannot recover contribution from them; ORS 18.440(3) would be a nullity if a tortfeasor who *does* settle the plaintiff's claim against all tortfeasors is *also* barred from recovering contribution on the theory that the resulting dismissal constitutes a judgment that the tortfeasors who did not participate in the settlement are "not liable in tort to the claimant" under ORS 18.440(1). We do not think the legislature intended ORS 18.440(1) to be so construed, and we do not think the Supreme Court intended *Blackledge* to control under these facts.

BB&S characterizes the second ground for its summary judgment motion as a *res judicata* issue. We disagree with that characterization. The question here is not whether the earlier judgment would bar the present action if conventional *res judicata* analysis were applied, but whether this action for contribution is within the scope of the Oregon statutes defining when contribution is recoverable and when a separate

---

[5] BB&S does not appear to contest Transport's factual assertion that that was the sole basis for the dismissal. In any event, there is nothing in the record that would permit us to conclude as a matter of law in this appeal from a summary judgment that there was a different basis for the dismissal of the wrongful death action.

action for its recovery is permitted. The court said in *Black-ledge:*

> "The Court of Appeals analyzed this case as if it were governed by the common law doctrine of collateral estoppel. It apparently reasoned that the only way to find Decker [the third party defendant] 'not liable in tort to the claimant' was to collaterally estop those seeking to litigate a contribution claim against him. It held that since the Harringtons [the defendants] were not a party, or in privity with a party, to the original action between plaintiff and Decker, they could not be collaterally estopped on the basis of that suit. Absent the statute, this might be a correct application of collateral estoppel doctrine, *see, e.g., Jones v. Flannigan,* 270 Or 121, 124, 526 P2d 543 (1974), *but collateral estoppel does not govern cases under ORS 18.440(1).* When the legislature created a cause of action for contribution, it specified in the statute the facts which must be established to support a claim of contribution. * * *" 291 Or at 695-96. (Emphasis supplied.)[6]

By a parity of reasoning, it is simply not relevant here whether *res judicata* would bar this action. The contribution statutes and not the common law are controlling. We conclude that the dismissal of the underlying action here does not preclude Transport from seeking contribution under the applicable statutes.

Reversed and remanded.[7]

---

[6] The court also said in *Blackledge:*

"* * * Decker can be liable to the Harringtons only if Decker would have been liable to plaintiff had she brought an action against Decker. * * * Here, Decker has established conclusively that if plaintiff brings an action against him he has a complete defense, res judicata, and therefore cannot be held liable. He therefore prevails in this case because, as a matter of fact, there is no liability to plaintiff." 291 Or at 694.

In the light of the language quoted in the text, we do not understand the language quoted here as meaning that *res judicata* is determinative of whether an action for contribution is available under the statutes. We understand the language as meaning only that, under the facts in *Blackledge,* a *statutory* condition precedent to the bringing of a contribution action was conclusively established not to exist by the earlier judgment.

[7] The parties do not make separate arguments pertaining to Transport's indemnity cause of action and do not suggest that we should dispose of the two causes of action differently or separately in this appeal. We do not understand the bases for the trial court's judgment to have been separate or different with respect to the two causes, and our remand is for further proceedings on both. *See Kauffman v. L. D. Mattson, Inc.,* 61 Or App 462, 467-68, 657 P2d 720, *rev den* 294 Or 792 (1983).