Argued and submitted December 12, 1989, the decision of the Court of Appeals and the judgment of the circuit court affirmed May 23, 1990

AETNA CASUALTY & SURETY CO.,
*Petitioner on Review,*

*v.*

OREGON HEALTH SCIENCES UNIVERSITY
and State of Oregon,
*Respondents on Review.*

(TC A8801-00185; CA A48659; SC S36226)

793 P2d 320

George W. McKallip, Jr., Portland, argued the cause for petitioner on review. With him on the petition was Kennedy, King & Zimmer, Portland.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the response to the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, and Linde,** Carson, Jones,*** Gillette, Van Hoomissen and Fadeley, Justices.

FADELEY, J.

** Linde, J., retired January 31, 1990.

*** Jones, J., resigned April 30, 1990.

**FADELEY, J.**

This is a tale of two cases — the first settled by payment and full release, the second dismissed with prejudice and now before the court on appeal. The two cases arose from a single injury. After the first case — for personal injuries — was settled by a payment from Aetna and a payment from the state and Oregon Health Sciences University (OHSU), Aetna brought the second case — for indemnity and contribution — against the state and OSHU. The trial judge dismissed Aetna's complaint. The Court of Appeals affirmed the dismissal. *Aetna Casualty & Surety Co. v. OHSU,* 96 Or App 292, 773 P2d 1320 (1989). We affirm.

In the first action, a patient of Shriners Hospital for Crippled Children complained of negligent treatment by Shriners and a physician working there for residency experience. Oregon Health Sciences University, a state agency, supplied the resident doctor to Shriners under an arrangement between the two entities. Patient named OHSU and the State of Oregon among those responsible for her injury, which resulted from an infection which developed while she was at Shriners Hospital. Shriners' insurer, Aetna, tendered the defense of the doctor and of Shriners to OHSU at the inception of the first case. OHSU accepted the tender as to the doctor only and thereafter defended the doctor. Aetna defended Shriners after the state and OHSU declined.

Patient's negligence claim was settled before trial. Aetna paid 81.4 percent of the total settlement amount; OHSU and the state paid the remaining 18.6 percent. Aetna asserted no reservation of rights at the time of the settlement and release. Aetna does not now assert either a written or an oral agreement allocating relative shares of responsibility for compensating the patient.

The release document memorializing the settlement does not appear to contemplate any subsequent litigation between any of the parties to the release to determine responsibility or proportional shares of it. By the terms of the release document, OHSU's and Aetna's separate payments bought peace for Shriners, the doctor involved, the state, and the University of Oregon Health Sciences Center. That "Release and Indemnity Agreement" recited that the release was a compromise of a disputed claim as to which liability was expressly

denied. In the release, the patient also agreed to "indemnify, hold harmless and repay, to any party hereby released, all claims damages, costs or expenses that such party may hereafter be legally obligated to pay because of any and all claimed losses, injuries or damages sustained" by the patient.

Aetna brought the second action as an aftermath to the settlement memorialized by the release. It relies upon separate legal theories of "indemnity" and "contribution" in contending that, as a matter of law, defendants OHSU and the State of Oregon are ultimately responsible to reimburse it for all or part of the amount it paid to compensate patient for the injuries suffered by patient while in the medical care of Aetna's insured, Shriners. Aetna also demands recovery of its costs of defense before settlement. The trial court dismissed Aetna's complaint against defendants under ORCP 21A(8) — "failure to state ultimate facts sufficient to constitute a claim" as a matter of law.

## INDEMNITY

■  Aetna claims a right of indemnity under ORS 30.268 to 30.300, and specifically under ORS 30.285(1).[1] It also separately claims indemnity as a third-party beneficiary of provisions of a contract between OHSU and the resident doctor. The contract refers to ORS 30.285(1) and promises that the statute's protections will be provided to the doctor "covering all duties and acts performed within the scope of the training program." That contract also grants OHSU authority to assign the resident doctor "to one or more of its Affiliated Hospitals." The contract contemplates that the doctor may become an employee of the affiliated hospital and be paid wages and provided group health insurance by that hospital.

ORS 30.285(1), by its terms, inures to the benefit of the public employee only. It does not purport to create any rights in third parties against public agencies or bodies. The

---

[1] ORS 30.285(1) provides: "The governing body of any public body shall defend, save harmless and indemnify any of its officers, employees and agents, whether elective or appointive, against any tort claim or demand, whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of duty." Subsection 1 was a part of Oregon's original tort claim act. Or Laws 1967, ch 627, § 7. It originally provided that an Oregon governmental agency "may" provide indemnity for acts in the scope of employment. In 1975, the legislature changed "may" to "shall." Or Laws 1975, ch 609, § 16.

contract's provisions do not enlarge the duties imposed by statute; they simply declare them. Moreover, the doctor himself has no claim under the statute or under the contract declaring the rights provided by statute. Aetna tendered the doctor's defense to OHSU, which accepted it, defended him successfully, and paid money to obtain his full release. One standing in the doctor's shoes has no claim because the doctor has suffered no loss. Aetna has no claim under ORS 30.285(1).

■ ■ The third-party beneficiary claim also is foreclosed by the limited scope of the statutory right incorporated, by direct reference, in the doctor's contract with OHSU, *i.e.*, only a public employee who is subject to a tort claim arising out of performance of duty is mentioned or covered by the statutory duty to indemnify. Even if the right were not so limited, there is no indication in the words of the contract between the doctor and OHSU, or in that agreement's context, that a benefit was intended to be conferred upon anyone other than the public employee. Absent an intention to confer a contract right upon a third party who has paid no value, the contract will not be interpreted to promise performance to the third-party stranger to the contract even though the stranger may incidentally benefit from the contract. *See* Restatement Contracts, § 133(1)(a) (1932); *see also* Restatement (Second) Contracts § 1 & *comment c* at 6 (1979); *Northwest Airlines v. Crosetti Bros.*, 258 Or 340, 346, 483 P2d 70 (1971); Howard, *The Restatement of the Law of Contracts with Oregon Notes*, 12 Or L Rev 201, 272-73 (1933).

Aetna's loss on the indemnity theory does not bar its assertion of a contribution theory. ORS 18.440(5). We turn to that question.

## CONTRIBUTION

■ Aetna alleges that patient "developed an infection which led to serious medical problems and permanent injury" while patient was at Shriners. Aetna further alleges that patient claimed the injury was "sustained as a result of the negligence of [doctor]." It does not allege that OHSU had any duty of supervision or control over the doctor while he was caring for Shriners' patient or that OHSU improperly trained the doctor. Neither does Aetna allege that patient made any of those claims concerning OHSU or attach a copy of patient's complaint to its complaint. No duty of OHSU to Shriners and no legal relationship or contract between them is alleged.

Aetna, however, alleges that "Aetna discharged an obligation that was the sole responsibility of" OHSU and the

State of Oregon. Aetna makes no allegations explaining the "sole responsibility" conclusion. However, Aetna alleges that "Shriners was legally responsible for the alleged negligence of [doctor] in the [patient's] lawsuit" but "was not independently liable or responsible" to the injured patient. Aetna further alleges that the doctor was "an employee and agent of defendants [OHSU and State of Oregon] and was acting within the course and scope of his employment and agency" at all material times.

In sum, Aetna alleges that both Shriners and OHSU are derivatively liable for the doctor's negligence without specifying the source of the derivative liability of OHSU for conduct of the doctor while caring for the patient at Shriners. According to the allegations, the doctor's negligent care created the common liability of Shriners and OHSU which was settled and released by patient before trial. Aetna's payment of a portion of the funds required to obtain that settlement is the basis for Aetna's contribution claim. Oregon Health Sciences University, however, paid $40,000 of the sum necessary to obtain a release of the common liability alleged.[2]

After the trial court dismissed the complaint, Aetna did not seek to replead and Aetna assigned no error on appeal to the trial court's dismissal with prejudice, as opposed to permitting amended pleadings.

In this court, Aetna asks for leave to replead to show that the doctor whose negligence created the common liability was an additional insured under Aetna's policy insuring Shriners. A proper interpretation of the indemnity and contribution statutes makes that issue irrelevant, even if we were to permit repleading in a case where no repleading error is preserved.

Aetna argues that the doctor was an additional insured with Shriners and that, standing in the shoes of the doctor and Shriners, Aetna is entitled to contribution as a matter of law. Aetna's "contribution" theory is also foreclosed by ORS 18.440(3), which provides:

"A tortfeasor who enters into a settlement with a claimant

---

[2] This case does not involve a fact pattern such as, for example, where drivers A & B negligently cause a collision and harm but where the separate negligence of driver C causes another collision, increasing the harm.

is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement."

The commentary to the Uniform Act, from which these statutes were derived, states that "the settling tortfeasor has himself no right of contribution against another unless he has assumed the full responsibility to the claimant [*i.e.*, person injured]."[3]

Another section of the contribution statute, ORS 18.450(4), dealing with time limits for seeking contributions, provides in relevant part:

"If there is no judgment for the injury or wrongful death against the tortfeasor seeking contribution, the right of contribution of that tortfeasor is barred unless the tortfeasor has either:

"(a)  Discharged by payment the common liability within the statute of limitations * * *; or

"(b)  Agreed while action is pending against the tortfeasor to discharge the common liability * * *."

This provision was enacted as Oregon Laws 1975, chapter 269, section 3. That chapter also amended ORS 18.440 (Or Laws 1975, ch 269, § 1), which originated in Oregon Laws 1971, chapter 665, section 1. With the 1975 revision came other sections consistent with the Uniform Contribution Among Tortfeasors Act. 12 ULA 63 (Master Ed 1975). The House and Senate Judiciary committees handling the 1975 revision knew that the provisions were from the Uniform Act.

After 1975, ORS 18.440, ORS 18.450, and ORS 18.455 are read together as part of one act. After 1975, where no judgment has been entered against the tortfeasor seeking contribution, "the right of contribution of that tortfeasor is

---

[3] 12 ULA 100 (Master Ed. 1975). In absence of statute, Restatement (Second) Torts § 886A(2) & *comment f* at 339 (1977) would declare the rule to require payment of the "entire" claim for the harm as a condition to seeking contribution. The black-letter rule provides: "The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm * * *." *See also* 3 Harper, James & Gray, The Law of Torts 50-51 § 10.2 (1986) ("satisfy the entire liability").

No facts to invoke an ORS 18.440(4) exception claim are urged or alleged.

barred unless the tortfeasor has * * * [d]ischarged by payment the common liability." ORS 18.450(4).

If OHSU was not liable in tort for patient's injury, it owes no contribution. ORS 18.440(1). Assuming that OHSU is in some way liable because of the agency alleged, Aetna's claim is barred because Aetna did not discharge the common liability in full, as the right to contribution under ORS 18.440(3) and 18.450(4) requires[4] in order to avoid the statutory bar.

Moreover, this interpretation is necessary to the internal consistency of the statutory plan establishing the right of contribution among tortfeasors. ORS 18.455(1)(b) states that where a tortfeasor buys peace by a separate settlement with the injured person for less than the full amount needed to discharge all tortfeasors and is given a release for liability which does not also release all others, the separately settling tortfeasor has no liability for contribution to any other tortfeasor. That subsection provides: "It [the release covenant] discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

Aetna's complaint does not allege facts that support any inference that OHSU or the state are liable in tort for patient's injury other than its conclusion about derivative responsibility. However, assuming that allegation is sufficient to connect OHSU to the doctor's negligence, Aetna does not allege or seek to allege that it discharged a common liability in full or that Aetna's payment extinguished a liability of OHSU within the requirements of ORS 18.450(4) and 18.440(3).[5]

---

[4] Our interpretation of "discharge * * * the common liability" to mean the full liability is consistent with that of the authors of the uniform act whose commentary states that the right to seek contribution is conditioned upon paying the "entire" amount of the liability or settlement sum, not a portion of it. Unif. Contribution Among Joint Tortfeasors Act, 12 ULA *Commissioners' Comment* § 1(d) at 65 (1975). Our analysis of ORS 18.440(3) is the same as the Florida appellate court's analysis of the identical subsection of the uniform act, section (1)(d) as adopted in Florida. *Best Sanitary Dis. Co. v. Little Food Town, Inc.,* 339 So2d 222, 226 (Fla App 1976). Our interpretation of "discharge the common liability" to require full payment rather than partial payment should not surprise insurers in Oregon. *See Transport Indemnity Co. v. BB&S, Inc.,* 63 Or App 392, 398, 664 P2d 1115 (1983).

[5] Aetna was a party to the agreement, entitled "Release and Indemnity Agreement," which fully released OHSU for which OHSU paid a valuable consideration. The contribution statutes are designed to prevent circularity of actions for recovery after a settlement. Yet, if OHSU must pay any amount to Aetna, OHSU is entitled under the release covenants to be indemnified by patient.

The decision of Court of Appeals and the judgment of the circuit court are affirmed.