Argued and submitted January 5, decision of the Court of Appeals reversed and judgment of the circuit court affirmed February 25, 1994

SISTERS OF ST. JOSEPH OF PEACE, HEALTH, AND HOSPITAL SERVICES, a Washington corporation, dba Sacred Heart General Hospital, *Petitioner on Review,*

*v.*

Nathan G. RUSSELL, *Defendant,*

*and*

THE AETNA CASUALTY AND SURETY COMPANY, *Respondent on Review.*

(CC 16-90-04757; CA A74348; SC S40584)

867 P2d 1377

James R. Strickland, of Curtis & Strickland, Eugene, argued the cause and filed the petition for petitioner on review.

Darren L. Otto, of Scheminske & Lyons, Portland, argued the cause for respondent on review and filed a response to the petition.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GRABER, J.

## GRABER, J.

This case involves principles relating to third-party beneficiary contracts.

## FACTS AND PROCEDURAL BACKGROUND

On September 13, 1984, Russell was injured when the log scaler that he was operating rolled down a hill. As a result of that accident, Russell's back and arm were broken. Sacred Heart General Hospital (hospital) provided medical treatment for his injuries from September 13, 1984, through August 30, 1985.

Russell was uncertain who his employer was at the time of the injury. For that reason, he filed four separate workers' compensation claims against four purported employers. After a hearing concerning all four claims, a referee held that an employer insured by The Aetna Casualty & Surety Company (Aetna) was Russell's employer for workers' compensation purposes. The Workers' Compensation Board (Board) affirmed. Aetna and Russell sought judicial review in the Court of Appeals.

While those petitions for judicial review were pending, the four purported employers and their insurers, including Aetna, entered into a Disputed Claim Settlement (DCS) agreement with Russell. The Board approved the DCS agreement pursuant to ORS 656.289(4),[1] and Aetna and Russell dismissed their petitions for judicial review of the Board's order.

Plaintiff hospital then brought this action against Russell and Aetna to recover for the medical care that plaintiff had provided to Russell. Plaintiff pleaded two theories of recovery against Russell: contract implied in fact (Claim 1) and account stated (Claim 2). Plaintiff also pleaded a claim against Aetna (Claim 3). That claim was based on the theory that plaintiff was a third-party beneficiary of the DCS agreement, to which Russell and Aetna were parties. The case was tried to a jury.

---

[1] ORS 656.289(4) provides in part that, "in any case where there is a bona fide dispute over compensability of a claim, the parties may, with the approval of * * * the board * * *, by agreement make such disposition of the claim as is considered reasonable."

At trial, plaintiff called Russell as a witness. Russell testified that he never agreed to "personally pay" plaintiff's bills, although he did not refuse the hospital's treatment and agreed that the treatment saved his life. Plaintiff's only other witness was its director of patient accounts, who testified as to the charges billed and gave the opinion that the charges were reasonable. Plaintiff also introduced the DCS agreement and the hospital bills into evidence.

At the close of all the evidence, Aetna moved for a directed verdict, pursuant to ORCP 60,[2] on Claim 3. Aetna argued two separate points: (a) that "there is no evidence of a third-party beneficiary contract," and (b) that "Plaintiff has * * * not presented any expert testimony sufficient to show that the [hospital] services that were allegedly provided to Defendant Russell were services which were reasonable * * * and necessary" to treat Russell's injuries. The trial court denied Aetna's motion. Thereafter, the jury returned a verdict for Russell on Claims 1 and 2 and for plaintiff against Aetna on Claim 3, the claim based on the DCS agreement.[3]

The trial court entered judgment on the verdict. Aetna appealed, assigning as error the denial of its motion for a directed verdict on Claim 3.[4]

The Court of Appeals reversed. *Sisters of St. Joseph v. Russell*, 122 Or App 188, 857 P2d 192 (1993). That court rejected plaintiff's characterization of Claim 3 as one based entirely on its rights as a third-party beneficiary of an express contract, the DCS agreement. 122 Or App at 191. The court concluded that, instead, plaintiff's express contract claim against Aetna "incorporates an implied agreement between plaintiff and Russell," so that plaintiff's right to recover depended on Russell's actual liability to plaintiff; plaintiff, therefore, could not recover unless it proved all the elements

---

[2] ORCP 60 provides, in part, that "[a]ny party may move for a directed verdict at the close of the evidence offered by an opponent or at the close of all the evidence."

[3] With respect to Claim 3, the jury verdict stated:

"I. What is the amount that plaintiff is entitled to recover from defendant Aetna, if any, on plaintiff's third claim for relief?

"$96,888.74."

[4] Plaintiff did not appeal concerning Claims 1 and 2, which were its claims against Russell. As a result, Claims 1 and 2 were not at issue on appeal and are not at issue on review.

of Claim 1, its implied contract claim against Russell. *Id.* at 191-92. The court then held that, because "there was no admissible evidence that what was supplied was necessary for the care of Russell," the trial court erred in not granting Aetna's motion for directed verdict. *Id.* at 192. One judge concurred, stating that "[p]laintiff was, at best, an incidental beneficiary of the [DCS] agreement and not entitled to bring an action as a third-party beneficiary of Russell's contract." *Ibid.* (Warren, P. J., concurring). One judge dissented, on the ground that the DCS agreement was ambiguous, that the jury was entitled to decide whether plaintiff was an intended third-party beneficiary of the DCS agreement, and that, "because the jury decided this case on the basis of an express contract, testimony concerning the reasonableness or necessity of the [medical] services [provided to Russell by plaintiff] is irrelevant." *Id.* at 193-95 (Landau, J., dissenting). We allowed plaintiff's petition for review and now reverse the decision of the Court of Appeals.

## PLAINTIFF AS THIRD-PARTY BENEFICIARY

Plaintiff's claim against Aetna was based on a single theory: "[t]hat Sacred Heart General Hospital became a third-party beneficiary of" the DCS agreement between Aetna and Russell, "pursuant to said agreement." We begin by examining that assertion. In the procedural posture of this case, we apply the following standard of review:

> "We * * * come to the issue of whether the trial court erred in denying defendant's motion for a directed verdict. Because plaintiff had the verdict, we cannot set it aside unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's cause of action. Or Const Art VII (Amend), § 3. We do not weigh the evidence; we consider the evidence, including inferences, in the light most favorable to plaintiff."

*Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984).

■ As a general proposition, a third party's right to enforce a contractual promise in its favor depends on the intention of the parties to the contract. Oregon case law recognizes three categories of third-party beneficiaries: donee

beneficiaries, creditor beneficiaries, and incidental beneficiaries. *See Johnston v. The Oregon Bank*, 285 Or 423, 429-30, 591 P2d 746 (1979) (considering whether the plaintiff was a donee, creditor, or incidental beneficiary). For a plaintiff to be a donee beneficiary, "it must appear that the [promisee's] intent in obtaining [the promisor's] promise to [perform] was to make a gift to [the] plaintiff or to confer a right to [performance] upon [the] plaintiff, which [performance] was not due *or claimed to be due* by the [promisee] to [the] plaintiff." *Northwest Airlines v. Crosetti Bros.*, 258 Or 340, 346, 483 P2d 70 (1971) (emphasis added). For a plaintiff to be a creditor beneficiary, "the performance * * * by [the promisor] must be to 'satisfy an actual *or supposed or asserted duty* of the promisee * * * to the [plaintiff].' " *Ibid.* (emphasis added; citation omitted). Finally, if the third party has paid no value *and* there is no intention to confer a contract right on that party, then the party is an incidental beneficiary who is not entitled to an action on the contract. In those circumstances, "the contract will not be interpreted to promise performance to the third-party stranger to the contract even though the stranger may incidentally benefit from the contract." *Aetna Casualty & Surety Co. v. OHSU*, 310 Or 61, 65, 793 P2d 320 (1990). In short, the first two categories of beneficiaries are entitled to enforce directly contractual promises intended to be for their benefit, even though they are strangers to the contract. Incidental beneficiaries are not so entitled.

■ In this case, plaintiff gave medical care to Russell. Plaintiff billed Russell for that medical care. In other words, at the time the DCS agreement was signed, plaintiff had given something of value to Russell and was asserting that Russell had a duty to pay for it. In those circumstances, plaintiff was a creditor beneficiary of the DCS agreement *if* the parties intended that contract to benefit plaintiff. To determine whether Aetna and Russell intended to benefit the hospital, we must examine the DCS agreement.

In numbered paragraph 1 of the DCS agreement, Russell "allege[d] that he ha[d] incurred" certain "medical expenses" as a result of the injury that gave rise to the settlement, including "Sacred Heart Hospital, Eugene, OR [$]98,872.50." Paragraph 2 provided:

"That Aetna Casualty & Surety Co. will hold * * * Russell harmless in regard to the above alleged medical expenses, including, but not limited to all principal, interest, penalties, attorneys' fees or any other charges or claims or demands or causes of action or suit against him by reason of the above alleged medical bills and/or obligations. [Russell] agrees that as between Aetna and the medical providers, Aetna is free to make whatever arrangements they wish with regard to settlement of the alleged bills."

Paragraph 3 of the DCS agreement specified that Russell could keep the time loss payments that he had received from Aetna. Paragraph 4 awarded a lump sum settlement to Russell and his lawyers. Paragraph 5 absolved the four purported employers and their insurers of any further responsibility for Russell's

"disputed and denied conditions excepting, however, the terms [that] this agreement provide[,] and the parties agree that the sums heretofore set forth to be the sole responsibility of the carrier Aetna Casualty & Surety Company."

Paragraph 6 of the DCS agreement included various general provisions relating to the settlement and stated that, after the date of the DCS agreement, Russell would be responsible "for his own temporary and permanent disability due to this injury and/or medical care and * * * for future medical expenses incurred due to these conditions and also including [Russell's] sole responsibility for any aggravation or permanent disability attendant thereto." Paragraph 6 also provided:

"[Russell] and his attorney agree and warrant that the above named health care providers are the only health care providers which have provided services to [Russell] in relation to this claim and Aetna Casualty & Surety Company shall be solely responsible for resolving the claims of said creditors and as hereinabove set forth shall indemnify and hold [Russell] harmless therefrom including any and all claims, demands, causes of action or suit, attorney fees, penalties, interest or otherwise arising out of the aforesaid bills by medical providers but that [Russell] shall be solely responsible for any future obligations or bills incurred for treatment of his condition."

The trial court held that the DCS agreement was ambiguous and, accordingly, that the issue should be decided by the jury. This court has explained:

"Unambiguous contracts must be enforced according to their terms. Whether the terms of a contract are ambiguous in the first instance is a question of law. If a contract is ambiguous, the trier of fact will ascertain the intent of the parties and construe the contract consistent with the intent of the parties."

*OSEA v. Rainier School Dist. No. 13*, 311 Or 188, 194, 808 P2d 83 (1991) (citations omitted).

We conclude that the trial court did not err in denying Aetna's motion for a directed verdict on the asserted ground that "there is no evidence of a third-party beneficiary contract." In so concluding, we note that plaintiff did not move for a directed verdict in its favor on that question and that neither party asserts in this court that the jury received erroneous instructions or an erroneous verdict form with respect to that question. Our holding, therefore, is limited in scope.

The most natural reading of paragraph 2 is that Aetna *must pay the listed medical providers*, although it remains free to negotiate concerning the *amount* to be paid to a given provider and the payment arrangements, such as timing.

Aetna argues, however, that the DCS agreement also could be read to suggest that the parties intended to settle Russell's workers' compensation claim without concern for the ability of plaintiff or other third-party health care providers to receive payment.

Other provisions demonstrate an intention to require Aetna to pay the third parties listed in paragraph 1 of the DCS agreement. For example, in paragraph 5 "the parties agree that *the sums heretofore set forth to be the sole responsibility of the carrier Aetna Casualty & Surety Company.*" (Emphasis added.) The phrase "the sums heretofore set forth" may be read to include the medical expenses listed in paragraph 1. Further, in paragraph 6, Russell "warrant[s] that the above named health care providers are the only health care providers which have provided services to [Russell] in relation to this claim and Aetna Casualty & Surety Company shall be solely responsible for resolving the claims of said creditors." Also in paragraph 6, Russell agrees

to "be fully responsible for future medical expenses incurred." As a whole, paragraph 6 may be read to demonstrate that the parties *intended for all health care providers to be paid,* but simply divided the responsibility for payment between past and future expenses.

In deciding whether the parties to the DCS agreement intended to benefit plaintiff, the jury could consider, not only the terms of the contract, but also the circumstances under which the contract was made. *See* ORS 42.220 ("In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."); *McDonald v. Supple,* 96 Or 486, 495-96, 190 P 315 (1920) (applying predecessor statute in context of jury trial and holding that evidence was admissible to show the meaning of ambiguous term of agreement). One of the circumstances was the potential liability facing Aetna and Russell at the time that they signed the DCS agreement.

Had Russell prevailed in his workers' compensation claim against Aetna's insured, Aetna would have been legally responsible for paying all of Russell's past and future medical bills attributable to his compensable injury, including the hospital bills at issue here. *See* ORS 656.245 (requiring insurer to provide medical services, including surgical, hospital, and nursing services, and medications and similar supplies, for every compensable injury). Had Russell's accident been held noncompensable, as Aetna was contending in the petition for judicial review that was pending at the time the DCS agreement was signed, Russell could have been legally responsible for paying all of his own medical expenses, including those owed to plaintiff. In the light of those circumstances, a possible interpretation of the DCS agreement was that all of the health care providers *must and would be paid* by someone and that the only question was who would be responsible to pay which bills — a question settled by Aetna's promise to pay past bills and Russell's promise to be responsible for future bills.

The jury also could infer from the extent of Russell's injuries, the extent of medical treatments provided, and the substantial size of the hospital bills that the parties to the

DCS agreement intended to ensure that someone would pay plaintiff. Finally, from Russell's testimony that plaintiff's services saved his life, the jury could infer that Russell, at least, intended that plaintiff be paid by Aetna.

In summary, the trial court did not err in denying Aetna's motion for a directed verdict on the asserted ground that, as a matter of law, plaintiff was not an intended third-party beneficiary of the DCS agreement.

## PROOF OF ENTITLEMENT TO RECOVERY

We turn to the question whether, in order to enforce the DCS agreement in its favor, plaintiff was required to prove that the medical services that it provided to Russell were necessary. Because of the procedural posture of the case, the same standard of review applies to this question as applied to the question whether plaintiff was an intended third-party beneficiary of the contract. Again, plaintiff did not seek a directed verdict in its favor and, again, there is no challenge to the adequacy of the jury instructions or the verdict form as to this question.

In general, a third-party creditor beneficiary's right to recover against the promisor is subject to any claim or defense arising from the beneficiary's own conduct or agreement. *See* Restatement (Second) of Contracts, § 309(4) and comment *c* (1981) (so stating; "The conduct of the beneficiary * * * may give rise to claims and defenses which may be asserted against him by the obligor, and his right may be affected by the terms of an agreement made by him."). In this case, Aetna asserts that plaintiff provided medical services to Russell that were not proved to be necessary.

Assuming that Aetna's factual assertion is accurate,[5] plaintiff's claim is not barred by that defense. That is because the contract that a third-party beneficiary seeks to enforce

---

[5] The parties agree that the following statement by the Court of Appeals, concerning the record in this case, is correct:

"Plaintiff presented evidence that it provided to Russell the medical services for which it sought payment. Moreover, it presented evidence that the charges for the medical services were reasonable. However, there was no admissible evidence that what was supplied was necessary for the care of Russell."

*Sisters of St. Joseph v. Russell*, 122 Or App 188, 192, 857 P2d 192 (1993).

may provide that some or all otherwise-available defenses do not apply.

Aetna argues that paragraph 2 of the DCS agreement can be read to suggest that the parties intended to condition the intention to benefit plaintiff on plaintiff's negotiations with Aetna regarding the hospital bills; the absence of proof that the hospital services were "necessary for the care of Russell" could be a basis for such negotiations.

Paragraph 5 of the DCS agreement, however, makes *"the sums* heretofore set forth" "the sole responsibility of the carrier Aetna." (Emphasis added.) One of those *sums* is stated to be *the full and exact dollar amount of plaintiff's bills* for Russell's care. In addition, as discussed above, paragraph 6 may be read to suggest that the DCS agreement simply divided responsibility for payment of medical expenses, as between Russell and Aetna, based *only* on whether the expenses were for past or future care. Paragraph 6 refers to the medical providers, including plaintiff, as Russell's "creditors." As a whole, the paragraph suggests that the parties to the DCS agreement recognized that Russell's medical expenses, as listed in paragraph 1, were, in fact, owed.

The trial court did not err in denying Aetna's motion for a directed verdict on the asserted ground that plaintiff failed to prove a required element of its claim.

## CONCLUSION

In summary, the trial court did not err in denying Aetna's motion for a directed verdict on either of the grounds asserted by Aetna. There are no other issues before us concerning the propriety of the jury's verdict, and that verdict must be sustained.[6]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[6] We also have considered Aetna's remaining assignment of error on appeal and conclude that it is not well taken.