81 F.3d 167
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Helen R. FEIGEL, William C. Feigel, Plaintiffs-Appellants,
v.
MINISTERS LIFE--A Mutual Life Insurance Company, a
corporation organized under the laws of the State
of Minnesota, Defendant-Appellee,
Willem Dragt, Defendant-Appellant.
 No. 94-35702.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 19, 1995.
Decided April 4, 1996.
 
 Before: WALLACE, Chief Justice, and D.W. NELSON, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Feigels appeal from the district court's grant of summary judgment. The Feigels filed suit in state court claiming that Ministers Life breached a contractual duty to provide them with an annuity. Ministers Life removed the case to the district court. The court granted Ministers Life's motion for summary judgment on two independent grounds: lack of consideration and lack of authorization of the company's agent to commit Ministers Life to this particular transaction.
 
 
 3
 The Feigels agreed to sell their drug-rehabilitation ranch to Harry Rossow in exchange for an annuity which would pay them more than $2,000 per month. Rossow, who was unable to personally fund the annuity, approached Willem Dragt, an agent for Ministers Life. Dragt and Rossow agreed that Ministers Life would pay the Feigels $2,587 per month and in exchange Rossow would pay Ministers Life $2,599 per month. Rossow's obligation was secured by a trust deed to the ranch that he purchased from the Feigels.
 
 
 4
 The ISA, which was signed by Dragt and Rossow, provided that if proceeds from the sale of the ranch were insufficient to satisfy Rossow's obligation to Ministers Life, then "[Rossow] shall pay the remaining amount unpaid." The ISA made no other provision for Ministers Life in the event Rossow was unable to meet his payment schedule. It referenced the land sales contract between the Feigels and Rossow and stipulated that the two transactions should be construed as related so that Rossow would be able to "claim a portion of his monthly payments herein as interest payments."
 
 
 5
 The Feigels received a copy of the annuity policy from Dragt. According to Rossow, the transfer took place at the closing of the sale of the ranch to Rossow in 1992. In exchange, Rossow received a deed to the ranch. Either at the closing or shortly thereafter, the Feigels received the first payment through their attorney. Jeffrey Brenner, the Feigels' attorney in the real estate transaction, said at his deposition that the check was a cashier's check indicating Ministers Life was the purchaser. Rossow claimed that he sent the initial checks, a total of about 10, directly to the Feigels and that Dragt had informed the Feigels that Ministers Life would only be involved if Rossow failed to make monthly payments to the Feigels. At some point during the summer of 1993 the checks stopped arriving. The Feigels' attorney contacted Ministers Life which claimed it had no knowledge of the annuity contract. Ministers Life received no payments from Rossow.
 
 
 6
 Dragt did not have actual authority to make or alter contracts, incur debts, or lend money on behalf of Ministers Life. In addition to naming Dragt its agent, Ministers Life conferred the title of "General Agency Manager" upon Dragt. This position entailed additional duties in exchange for higher commissions, but the general agency manager agreement expressly did not alter the limitations on authority set forth in the main agency agreement.
 
 I.
 
 7
 Dragt's Authority as an Agent of Ministers Life
 
 
 8
 Under Oregon law, apparent authority is created "by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter. The third party must also rely on that belief." Badger v. Paulson Investment Co., Inc., 803 P.2d 1178, 1183 (Or.1991) (quoting Mattson v. Commercial Credit Business Loans, Inc., 723 P.2d 996 (Or.1986)). When the principal permits the agent to appear to have authority to bind the principal, apparent authority exists. Badger, 803 P.2d at 1184 (publicly recognizing agents in letter to customers without noting limitations on authority, combined with use of company stationery, allowed finding of apparent authority); Seiders v. Hefner, 747 P.2d 1003, 1006-07 (Or.App.1987) (mailing proceeds check to former agent allowed finding of apparent authority to advise recipients to loan him the money). The authority of a purported agent is a question of fact, and a party is not entitled to a ruling on agency as a matter of law unless reasonable minds would necessarily come to the same conclusion. J-P Int'l, Ltd. v. Thompson, 838 P.2d 616, 618 (Or.App.1992).
 
 
 9
 Ministers Life concedes that Dragt was its agent but maintains that his authority did not allow him to alter contracts, extend credit, or incur indebtedness. However, apparent authority may be found even when a principal expressly forbids the conduct in question. Badger, 803 P.2d at 1185.
 
 
 10
 An Oregon court would likely find that the evidence offered by the Feigels on the question of agency was sufficient to submit the question to a jury. See id.; Seiders, 747 P.2d at 1006. The Feigels and Rossow received several letters from Dragt which were on company stationery. The letterhead on the stationery included Dragt's name and his title "General Agency Manager." Brenner said after Dragt became involved in the sale of the ranch, he consulted the yellow pages and found a listing for Ministers Life which named Dragt as its "General Agency Manager." In his affidavit Brenner stated that the title suggested to him that Dragt was "someone in authority" for Ministers Life, noting that Dragt "seemed very knowledgeable" about the sale of the ranch and annuities. Brenner testified at his deposition that Dragt "held himself out as an agent and as kind of the regional guy in charge." At the initial meeting between Dragt and the Feigels, Dragt produced a sample Ministers Life annuity policy.
 
 
 11
 Because Ministers Life bestowed the title "general agency manager" upon Dragt, it was the conduct of the company that led the Feigels to believe Dragt's authority was sufficiently broad to encompass this transaction. See Badger, 803 P.2d at 1183; Seiders, 742 P.2d at 1007. In Seiders, where the purported agent was no longer an actual agent, an Oregon court found that the plaintiff was reasonable in assuming that a former agent was authorized to advise her to loan him money based on his former relationship with the company and the company conduct in mistakenly sending him the proceeds check. Dragt was concededly an agent of Ministers Life at the time of the transaction with a title that suggested, and in fact carried, greater responsibility than that of an average agent. While this transaction is atypical, under Oregon law it is not so beyond the realm of normal affairs that a jury could not reasonably find apparent agency. See Seiders, 742 P.2d at 1007.
 
 
 12
 Ministers Life insists that the Feigels and Rossow were aware of Dragt's lack of authority which would defeat their argument for apparent authority. See Badger, 803 P.2d at 1183. It relies on its agency agreement with Dragt which expressly prohibited him from altering contracts, extending credit, or incurring indebtedness or liability. Citing its deposition of Brenner, Ministers Life maintains that the agreement was available to all parties at the closing of the sale of the ranch. In their reply brief, the Feigels maintain that Brenner merely said he did not know if he saw the agreement. In fact, at his deposition Brenner said he had seen the document but was not sure when he first saw it. Pressed as to whether he saw it before or after the closing, he initially said he did not know and then said he had received his copy of the agreement after the closing. Based on Brenner's statements, a jury could reasonably conclude that neither the Feigels nor their attorney had seen the document prior to closing and thus they were unaware of the limitations on Dragt's authority.
 
 
 13
 In its brief, Ministers Life also asserts that portions of the agency agreement were in the title company's file "as having been reviewed at closing." Ministers Life, however, does not provide any citation to the record for that assertion. Neither the closing agreement nor the sales agreement and earnest money receipt contains any reference to the agency agreement.
 
 II.
 Consideration for the Annuity
 
 14
 Under Oregon law, a third party creditor beneficiary may enforce a contract upon showing that the promisor's performance satisfies an actual or asserted duty of the promisee to the plaintiff. Sisters of St. Joseph v. Russell, 867 P.2d 1377, 1380 (Or.1994). In this transaction the Feigels are third party beneficiaries of the ISA. See id. Ministers Life's promise to provide the Feigels with an annuity was to satisfy Rossow's duty to provide the Feigels with an annuity in exchange for a deed to the ranch. See ISA. The first two paragraphs of the ISA recited the real estate transaction between Rossow and the Feigels and stated that Ministers Life was providing part of the consideration for Rossow's purchase of the ranch by providing the Feigels with an annuity. Id. The district court viewed Rossow's two agreements as unrelated and noted that the Feigels were not parties to the ISA. However, as third party beneficiaries, the Feigels retained the right to enforce the ISA to the extent that it is a valid contract. See Russell, 867 P.2d at 1380.
 
 
 15
 In concluding that there was no consideration for Ministers Life's promise to provide the Feigels with an annuity, the district court emphasized Rossow's failure to make monthly payments to Ministers Life as required under the ISA, concluding no consideration was "paid." Under Oregon law, Rossow's promise to make monthly payments, secured by a trust deed, was by itself sufficient consideration for Ministers Life's promise to make monthly payments to the Feigels. See Shea v. Begley, 766 P.2d 418, 420 (Or.App.1988) (an exchange of promises is sufficient to support a contract). Any failure to make payments did not invalidate the contract in terms of negating consideration. See id. Moreover, Oregon courts will not look into the adequacy of consideration whenever the parties have "knowingly and deliberately fixed upon any price, however great or small." Eldridge v. Johnston, 245 P.2d 239, 250 (Or.1952). Assuming Dragt was authorized to act on behalf of Ministers Life in this matter, there is no doubt he entered the transaction knowingly and deliberately.
 
 
 16
 Under the terms of the ISA between Ministers Life and Rossow, Rossow's payment was not a condition precedent to Ministers Life's provision of an annuity to the Feigels. Absent a clear and unambiguous statement in the contract making payments a condition precedent, an Oregon court will not imply a condition precedent. Krause v. Washington National Insurance Co., 468 P.2d 513, 519 (Or.1970) (holding that payment of insurance premium was not a condition precedent to coverage). Paragraphs 10 and 15 of the ISA describe the remedies available to Ministers Life in the event that Rossow breached his contractual duty to make monthly payments to appellant. Paragraph 10 grants Ministers Life a security interest in the ranch. Paragraph 15 provides that upon breach by Rossow, the entire amount owed by Rossow becomes due to the Ministers Life. In the event that the proceeds from the sale of the ranch would be insufficient to cover the amount owed by Rossow, paragraph 15 provides only that Rossow "shall pay the remaining amount unpaid." The agreement makes no further provision in the event that Rossow failed to make his payments. Paragraph 15 does not provide Ministers Life with the remedy of discontinuing payments to the Feigels in the event that Rossow failed to make his payments.
 
 
 17
 The district court also relied on the language in the annuity policy delivered to the Feigels. The specification page of the policy stipulates the initial premium is to be an amount "sufficient to pay $2587 monthly for life to annuitant and primary beneficiary." The policy later stipulates that it is issued in consideration of the application and payment of the first premium. Id. at 3. It limits the contract to the "Policy, the Application, and any attached riders and other papers. Only an officer of ML may change or waive any part of it." The policy does not provide any definition of officer.
 
 
 18
 Under Oregon law, an insurance company may waive the requirement of an initial payment as a condition precedent for coverage. See Mock v. Glens Falls Indemnity Co., 309 P.2d 180, 186 (Or.1957) (holding "course of dealing" between parties contemplated coverage prior to payment of premium); Cranston v. West Coast Life Ins. Co., 128 P. 427, 432 (Or.1912) (noting that company could have waived its requirements concerning payment and authority of agents to accept payments). The agreement between Rossow and the Ministers Life waived the requirement of an initial premium sufficient to fund the annuity. It provided instead that Rossow would make monthly payments sufficient to cover the monthly payments to the Feigels and granted Ministers Life a security interest in the ranch to secure his promise to make monthly payments. To the extent that Dragt had the apparent authority to enter into the ISA, the agreement implicitly waives the standard requirements of Ministers Life's annuity policies.
 
 
 19
 Finally, Ministers Life suggests that the deed cannot serve as consideration for the annuity because it was never accepted by Ministers Life but rather renounced as soon as Ministers Life learned of its existence. Ministers Life maintains that its actions have continued to be consistent with its initial renunciation of interest in the property. This argument, however, assumes Dragt was not authorized to act on behalf on Ministers Life in the relevant transactions. If Dragt was authorized to enter into this transaction, acceptance of the deed was implicit in his signing of the ISA which directs the title and escrow agent to record the trust deed. See Lancaster v. May, 243 P.2d 268, 271 (Or.1952) (consent to the deed may be implied). The execution, acknowledgment, and recording of a deed is prima facie evidence of its acceptance. Id.
 
 
 20
 While this transaction may be a very poor deal for Ministers Life, the promise of monthly payments secured by a trust deed to the ranch is consideration under Oregon law. Because a jury could conclude that Dragt had the apparent authority to enter into this transaction and because there is consideration for the contract, the panel should reverse and remand the case to the district court for further proceedings. Lindahl v. Air France, 930 F.2d 1434, 1436 (9th Cir.1991).
 
 
 21
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3